INHABITANTS OF PITTSFIELD *versus* INHABITANTS OF DETROIT.

By R. S., c. 143, § 20, no insane person shall suffer any of the disabilities incident to pauperism, nor be hereafter deemed a pauper, by reason of having received support in the insane hospital from the State.

An insane person, sent to the insane hospital as a patient by the municipal officers of the town in which he has established his residence, does not thereby lose it, but it continues during his residence in the hospital.

ON FACTS AGREED.

ASSUMPSIT to recover the amount paid for the support of an insane pauper in the insane hospital, from August 31, 1864, to Feb. 28, 1865.

The pauper was a single person, twenty-one years of age, and once had his settlement in Detroit. Nov., 1857, he removed to Pittsfield, where he continued to reside until Nov., 1859, when, upon due examination, being found insane, he was sent to the insane hospital, in Augusta, where he remained until Feb., 1865, when he died. The town of Pittsfield, being liable in the first instance, paid its legal proportion of his support in the hospital, from Aug., 1864 to Feb., 1865, his friends having paid the expenses which accrued prior to that time, the State also paying one dollar per week. The plaintiffs notified the defendants who answered denying settlement.

The Court was to enter nonsuit or default as the legal rights of the parties should require.

*George W. Whitney,* for the plaintiffs.

1. The pauper did not have his home in Pittsfield five successive years. When he went to the hospital he had no intention of returning, being incapable of having any intention. Although insanity will not prevent the acquisition of a settlement by the sixth mode, as by *Machias* v. *E. Machias*, 33 Maine, 427 ; *New Vineyard* v. *Harpswell*, 33 Maine, 193 ; *Gardiner* v. *Farmington*, 45 Maine, 537, still it is evident that the residence of an insane person must be actual and not constructive. Where an insane person actually dwells there he has his residence.

He was in the hospital against his will, and while there was incapable of gaining settlement anywhere.

2. State paid $1 per week after Nov., 1861. Such payment prevented Jenkins from gaining a settlement.

*S. S. Hackett,* for the defendants.

KENT, J. — The pauper commenced "to dwell and have his home" in Pittsfield, but, before he had so dwelt for five successive years, he was, on due proceedings, "committed to the insane hospital, by the selectmen of said town, as an insane person." He remained, under this commitment, in the hospital until he died. The time he remained in the hospital added to the time he had resided in Pittsfield, before entering it, made up more than five years. The question is, whether his home was, in legal contemplation, in that town whilst he was in the hospital as an insane man, or did he cease to have a continuing home there after his removal to that institution ?

Certain general principles have been established by the decisions in our own Court, bearing more or less directly on this question.

When a residence is once established, an absence for a longer or shorter period for temporary purposes does not change such residence. To break up a residence once fixed, there must be a departure with an intention to abandon, or

without an intention to return after a temporary absence. There are limitations and qualifications to be found in some of the cases, but in all of them the *intention* of the party is the controlling fact.

The objection made by the plaintiffs' counsel is, that, as the pauper was ·actually absent, he had no intention to return, because, being insane, he could have no intention on the subject. But another and preliminary intention is recognized by the law, viz., an intention to *remove*, and to abandon the residence. An insane man could no more have this intention, than he could have an intention to return.

In the case, as stated, this insane man did not even voluntarily remove. Without any assent or action on his part he was removed, by the action of the municipal officers of the town, to the hospital. It has been decided that he did not gain a residence in Augusta. *Smithfield* v. *Belgrade*, 19 Maine, 387; *Yarmouth* v. *N. Yarmouth*, 44 Maine, 352.

In the absence of all other facts, can a person, detained in the insane hospital, under the provisions of the law, be considered as having abandoned his home, or must he be considered as temporarily absent, and as still retaining his home where it was established when he was removed?

No one would probably raise any question in the case of a sane man, who should become a patient in a general hospital in another town or State, or in the case of a convict, committed to the State's prison, or county jail. A person has no residence in a public institution, as distinguished from a residence in some town. *Granby* v. *Amherst*, 7 Mass.; 1; *Adams* v. *Wiscasset*, 5 Mass., 328.

If this pauper had recovered and returned to his home, before receiving any supplies as a pauper, could any one question his right to vote, at an election held within three months after his return? If it could be rightly questioned, then every patient, who is sent to the hospital, leaving a home and family, would lose his residence, and be remitted to a new commencing domicil upon his recovery and return to his home.

Inhabitants of Pittsfield *v.* Inhabitants of Detroit.

It has been settled, that a person becoming insane, may gain a settlement by a residence commenced when sane, and continued for five years. *Machias* v. *East Machias*, 33 Maine, 427 ; *Gardiner* v. *Farmington*, 45 Maine, 537. Having commenced a residence when sane, it continues until abandoned or legally changed. We do not think that a person insane, sent by the officers of his town to the insane hospital, as a patient, thereby loses his residence and home before established in the town. It is worthy of consideration, although perhaps it does not alter the principle, that the establishment of the opposite doctrine would offer some temptation to town officers to send doubtful cases to the hospital, to prevent the gaining of a settlement by a person likely to become a pauper.

There is another point made by the counsel for the plaintiffs, viz.,—that the State having paid one dollar per week for a part of the time included in the five years, that payment must be considered as supplies to Jenkins as a pauper within the statute. This proposition cannot be sustained. The statute, by virtue of which this payment by the State was made, (R. S., c. 143, § 20,) expressly provides that such aid shall not be considered as supplies to a pauper. And further, a person is to be considered as receiving supplies as a pauper, within the meaning of rule 6th, c. 24, § 1, only when he receives such supplies from *the town* where he has his settlement, or where he is found in distress. *Opinion of Justices*, 7 Maine, 497 ; same in Mass., 11 Pick., 540, and 1 Met., 572 ; *Veazie* v. *China*, 50 Maine, 518 ; *Boston* v. *Westport*, 12 Pick., 16. *Plaintiffs nonsuit.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.