## Mary F. Parcher, Guardian, Appellee, v. J. E. Reese, Conservator, Appellant.

1. INSANE PERSONS—*what is the nature and purpose of lunacy laws.* Lunacy laws are enacted for the benefit of the unfortunate as well as for that of the public, and of necessity operate at the place and in the jurisdiction where the insane person is found, and are in their nature emergency laws, operating, if at all, when the emergency arises and should be construed liberally to the end that their purpose may be effected.

2. INSANE PERSONS—*what constitutes nonresidence of.* "Nonresidence," as used in section 41 of the lunacy laws of this State (J. & A. ¶ 7325), should be construed to mean an insane person who is beyond the jurisdiction of the courts of this State and who has been taken before the courts of some other State and adjudged to be insane, and a guardian or conservator of his person and estate has been appointed by such court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. INSANE PERSONS—*when adjudication of insanity and appointment of conservator by foreign court should be recognized.* Where an insane person, who was formerly a resident of this State, has been taken before the courts of some other State and adjudged to be insane and a guardian and conservator of his estate has been appointed by such courts, the courts of this State should recognize the acts of such foreign courts as valid, and the guardian or conservator appointed by them as the guardian or conservator of a nonresident lunatic.

4. INSANE PERSONS—*when foreign conservator is entitled to charge of estate of former resident of State.* Where a conservator had been appointed in this State for an insane person, who, after being an inmate for a number of years in an institution in this State, was, on the advice of the superintendent of the institution and with the consent of the conservator and of the County Court which declared her sane, taken to another State by her sister, a resident of that State, who provided a home for her and who was appointed by a competent court of that State as guardian of her person and estate after she had been declared of unsound mind, *held* that a petition filed in the County Court of this State which had jurisdiction of the insane person while she was a resident here by the foreign guardian, praying for an order directing the conservator to turn over to her the estate of her ward, was properly granted.

Appeal from the Circuit Court of Christian county; the Hon. JAMES C. McBRIDE, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed October 13, 1916.

J. H. FORNOFF, for appellant.

TAYLOR & TAYLOR, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

Ella Tunison, now past sixty-two years of age, was on February 21, 1901, adjudged insane in the County Court of Christian county, Illinois, and was then committed to the State hospital for the insane located at Jacksonville, Illinois, and remained an inmate of that institution until June 4, 1907. In November, 1905, appellant was appointed her conservator in Christian

county, Illinois. Neither her relatives in Illinois nor
appellant, her conservator, ever visited her at Jackson-
ville, and her conservator has never seen her since she
was adjudged insane and committed to the Jackson-
ville Insane Asylum. Neither the mental nor physical
condition of the patient improved while she was in the
Jacksonville asylum and in June, 1907, appellee, a sis-
ter of the patient, asked that she might be allowed to
take her to her home in Missouri and care for her.
The superintendent of the asylum advised that she be
allowed to go with her sister. Appellant. consented
that she should be allowed to do so and the County
Court of Christian county also consented. It was the
evident intent of all concerned that the arrangement
thus consummated should be a permanent one and that
from that time forward the home of appellee should
be the home of the ward. She has been with her sis-
ter, the appellee, in Maryville, Nodaway county, Mis-
souri, from that time to the present. She has a fine
home there, is well cared for by her sister and is still
insane and incapable of taking care of herself. In
January, 1915, in the Probate Court of Nodaway
county, Missouri, the ward, Ella Tunison, was ad-
judged to be of unsound mind and appellee was ap-
pointed and qualified as guardian of her person and
estate. Thereafter, appellee as such guardian filed her
petition in the County Court of. Christian county, Illi-
nois, praying for an order directing appellant to turn
over to her the estate of the ward, which consists of
something over $9,000 in secured notes and cash.
That court granted the prayer of the petition. Appel-
lant appealed to the Circuit Court of Christian county
and that court entered the same kind of an order.

It seems manifest that it is not only best for the
ward to remain in Maryville, where she now is and
where she has been well cared for for eight or nine
years by her sister, who seems to be the only relative

who shows any interest in her, but that her funds should likewise be placed in the hands of appellee, who knows her needs and can use the same intelligently for her benefit. By that means also there will be saved to the estate the most liberal annual allowance of $100, which appellant has received for loaning about $9,000 and collecting the interest on the loan.

It is not questioned that the guardian of a nonresident insane person appointed in any of the states or territories of the United States or any foreign country may commence and prosecute suits in his own name to recover property in this State under sections 41 and 42 of the Lunacy Act (J. & A. ¶¶ 7325, 7326), but it is insisted that Ella Tunison is not and has not been a nonresident of the State and that therefore the sections referred to confer on appellee no rights as the guardian of a nonresident insane person.

While an insane person is conclusively presumed to be incapable of determining for himself where he will abide or hold his domicile, yet it has been held that if he has a conservator or guardian, his domicile or residence may be changed by the direction or assent of such officer, either expressly or impliedly given. *Holyoke v. Haskins*, 5 Pick. (Mass.) 20; *Anderson v. Anderson's Estate*, 42 Vt. 350; *Inhabitants of Pittsfield v. Inhabitants of Detroit*, 53 Me. 442; *Hill v. Horton*, 4 Dem. Surr. (N. Y.) 88; *Culver's Appeal*, 48 Conn. 165; *In re Jackson*, 15 Mich. 417. There are authorities holding a contrary view, but we are satisfied that the weight of authority is in accord with those cited.

We also feel that no sound reason can be found for holding that persons under disability because of want of mental capacity should be governed by any different rule as to fixing their place of residence than is applied to those under the disability of infancy or coverture. In the instance of both minor children and

married women their place of residence is determined by the will of others. Certainly those having charge of insane persons, who are the most helpless of all dependent persons, should be clothed with as much authority over their wards.

While our courts of last resort have not expressly passed on this question, this court in 1903, in the case of *Langmuir v. Landes,* 113 Ill. App. 134, recognized as valid a change of residence from this State to Canada of a person who had been adjudged insane in this State and had gone to Canada and, after some years, had been adjudged insane there, and also recognized the right of the representatives of the insane person in the foreign country to recover from his conservator in this State the property of the ward in his hands.

The words "resident" and "nonresident" have different meanings according to the subject under consideration. When used with reference to elections or the service of legal process, they are often used as synonymous with "domicile" or "citizenship." When used with reference to nonresident debtors and the right of attachment, they have to do with the abiding place of the person as distinguished from his domicile, home or citizenship, and persons have been held to be nonresidents who abide in one State and retain their domicile, citizenship and voting place in another. *Morgan v. Nunes,* 54 Miss. 310; *Haggart v. Morgan,* 5 N. Y. (1 Seld.) 422-427; *Chaine v. Wilson,* 14 N. Y. Super. Ct. 673-686; *Southern R. Co. v. McDonald* (Tenn.), 59 S. W. 370. In *Carden v. Carden,* 107 N. C. 214, 12 S. E. 197, 198, the "cessation to dwell within a State for an uncertain period without a definite intention as to a time for returning, although a general intention to return may exist" was held to constitute nonresidence.

Lunacy laws are enacted for the benefit of the unfortunate as well as the public. Of necessity they operate

at the place and in the jurisdiction where the insane person is found. They are in their nature emergency laws and must operate, if they operate at all, when the emergency arises. Such laws should be construed liberally to the end that their purpose may be effectuated. If courts stick in the bark on technical questions of construction of terms, the lunatic may destroy himself or others or waste or lose his property and the object of the law thereby be frustrated while hairs are split.

"Nonresident" as used in paragraph 41 of the lunacy laws of this State (J. & A. ¶ 7325) should be construed to mean an insane person who is beyond the jurisdiction of the courts of this State and who has been taken before the courts of such other State and adjudged to be insane, and a guardian or conservator of his person and estate has been appointed by such court. In such cases the courts of this State should recognize the acts of such foreign courts as valid, and the guardian or conservator appointed by them as the guardian or conservator of a nonresident lunatic.

On a state of facts much the same as those in the case at bar, except that the ward was an infant and its removal from the State of Michigan to the Dominion of Canada amounted to criminal abduction, in which the respondent in the habeas corpus proceeding then before the court was at least implicated if not the chief offender, Mr. Justice Cooley, in the case entitled "*In the Matter of Jackson*," reported in 15 Mich. 416 (432 to 442), after disposing of other questions in that case, said: "If the child is held in a foreign jurisdiction by one appointed his guardian there, the respondent has legally no such power as is claimed, even though the person having the custody may have been his agent, and, as such, procured the appointment. The agency does not enter into the guardianship. The law there will know nothing of such an agency, and will refuse to recognize it. The custody has ceased to be that of the

individual, and has become that of the agent of the law. That law is the foreign law; and we must come directly in conflict with it, if we exercise jurisdiction on the facts here shown. The case, as it would stand in Canada, would be that of a guardian appointed by its courts over a minor within its jurisdiction, coerced indirectly by a foreign court to remove the child abroad, and there deliver it to custodians whose authority would not be recognized in Canada while the present appointment stands. It would be an indirect assumption of jurisdiction by the court in Michigan over the appointment made in Canada, even to the extent of reversing that action. I know of no precedent for such a course, and a due regard to interstate comity should incline us to forbear.

"It is quite probable that the appointment in Canada was made in ignorance of the real facts of the case. I cannot doubt if these were fully presented, the court there would revoke its action, and cause the child to be delivered to the testamentary guardians. In my opinion, that court is the tribunal to appeal to under the facts disclosed by the pleadings."

It being disclosed by the record in this case that, before this proceeding was begun, appellee was duly appointed guardian in the State of Missouri of Ella Tunison, who had in the same proceeding been adjudged to be insane, that she was a resident of that State at that time, within the meaning of paragraph 41 of our lunacy laws, and that she became such a resident of Missouri by the consent and with the assistance of appellant, it follows that appellee was at the time this proceeding was begun the guardian of a nonresident insane person and as such was entitled to prosecute this proceeding.

The judgment of the Circuit Court being in accord with the views here expressed and no error appearing in the record of that court, the judgment appealed from is affirmed.

*Affirmed.*