In re Estate of Louis Spengler, Insane. Henry Krumroy, Conservator of the Estate of Louis Spengler, Insane, Appellant, v. Trenholme Dickson, Appellee.

Gen. No. 38,459.

Opinion filed December 16, 1935. Rehearing denied December 30, 1935.

Daniel L. Madden, of Chicago, for appellant; John E. Toomey and James C. O'Brien, Jr., of counsel.

Pattison & Vise, of Chicago, for appellee; Isidore Vise, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

A preliminary statement of undisputed facts may clarify the issues on this appeal. In 1909 Louis Spengler, then 24 years of age, was a citizen of the United States, whose residence and domicile was in Chicago. Sometime in that year (the precise date is not determined) he went to the City of Calgary, Province of Alberta, in the Dominion of Canada. In December, 1912, he was arrested there on a warrant charging that he was insane. An inquiry was held before a magistrate. An order was entered in conformity with the laws of Alberta, committing him to the custody of the attorney general, by whom he was placed in the Provincial Mental Hospital at Ponoka, Alberta, where he has since continuously remained and where he now is. He was and is unmarried. His father, his mother and a brother, who resided in Chicago, have since that time passed away intestate, and Louis Spengler is now entitled to receive considerable sums of money and property from their estates. Krumroy, husband of a deceased sister of Louis Spengler, on December 14, 1932, filed a petition in the probate court of Cook county alleging that said Louis was a nonresident and caused a summons against him to be issued returnable to the January term 1933 of the probate court of Cook county. February 6, 1933, he procured an order by which he was appointed conservator of the estate of Louis Spengler. Trenholme Dickson, acting under the laws of Alberta, Canada, is the administrator of the estates of the mentally incompetent for that province and particularly administrator of the estate of Louis Spengler, insane. Dickson filed his petition in the probate court of Cook county setting up the above facts and praying that Krumroy, as conservator in Cook county of Louis Spengler's estate, be required to turn over to him as administrator at least $5,000 of the

funds in his possession, to be used for and in behalf of said Louis Spengler.

Krumroy answered the petition admitting his own appointment, the possession of the money and property, but denying that petitioner Dickson was entitled to receive any sum whatever. The probate court, after hearing, entered an order in favor of Dickson as prayed. Krumroy perfected an appeal to the circuit court of Cook county, where after a trial *de novo* that court on May 2, 1935, entered an order directing Krumroy as conservator to immediately deliver to Trenholme Dickson, administrator, etc., funds in his possession in the sum of $5,000. The order also directs that Krumroy as conservator "deliver to Trenholme Dickson, administrator as aforesaid, all further funds and assets which may hereafter be collected or come into his possession allowing him to retain only a sufficient amount for reasonable administration and other costs." From that order Krumroy prosecutes this appeal.

The petition of Dickson is based upon section 41 of chapter 86 of Cahill's 1933 statutes, ¶ 42 (Smith-Hurd's Ill. Rev. Stats. 1933, p. 1825), which in substance provides that the conservator, guardian, curator or committee of any *non-resident,* idiot, lunatic, insane or distracted person, spendthrift or drunkard, appointed in any of the United States or territories, or any foreign country, in pursuance of the laws of any such state, territory or country, may commence and prosecute in his name as such conservator, etc., suits for the recovery of any real or personal property, or any interest therein in this State, belonging to any such incompetent person in any of the courts of record in this State having jurisdiction in similar cases and may collect, receive and remove to his place of residence any personal estate of his ward.

It is the contention of Krumroy that Louis Spengler is not a nonresident within the meaning of the Illinois statute, and that the order of the circuit court is erroneous for that reason. He says that there is nothing to be found in the statute which would justify a construction of the term "nonresident" different from that which has been given to it in other statutes. He cites cases, such as *Pells v. Snell,* 130 Ill. 379, where the word "resident" as used in the statute of limitations was construed; *People v. Estate of Moir,* 207 Ill. 180, where the word "resident" as used in the inheritance -tax statute was construed, and like authorities construing the words "resident" and "nonresident" in other statutes in this and other States. *Hayes v. Hayes,* 74 Ill. 312.; *Wallace v. Lodge,* 5 Ill. App. 507, 9 R. C. L. 540, sec. 4; 14 Cyc. p. 835; *Merrill's Heirs v. Morrisett,* 76 Ala. 433; *Estate of Henning,* 128 Cal. 214; *Allgood v. Williams,* 92 Ala. 551, and *Dimock, In re,* 11 N. Y. Misc. 610. He says that residence is synonymous with "domicile" and should receive the same interpretation in construing section 40 of the statute. He says these cases hold that "residence" is a fixed or permanent abode, which if once established is presumed to continue, and the burden is entirely on the person seeking to show a change; that theretofore to acquire a new residence there must be an intention to change coupled with the actual change without the intention of returning. Starting, therefore, with the fact that Chicago, Illinois, was at one time the fixed and permanent abode of Louis Spengler, and that when he departed from Chicago his father and mother still remained here, he says, the burden of proof is entirely on petitioner to show a change of residence; that this could be done by showing the alleged lunatic's intention through declarations made by him at the time he left, or shortly after leaving; that there is no evidence of any such declarations; that the proof is therefore

wholly insufficient to prove the abandonment of the residence in Cook county and the establishment of a new residence in Canada; that the number of years a person has been absent from his residence standing by itself is not sufficient to show an abandonment of one residence and the adoption of another. *Kreitz v. Behrensmeyer,* 125 Ill. 141, 195; *Town of Freeport v. Board of Supervisors of Stephenson County,* 41 Ill. 495; *Payne v. Town of Dunham,* 29 Ill. 125, are also cited to the point that having been declared mentally incapacitated the insane person could not thereafter voluntarily change his residence. In other words, Krumroy contends that Louis Spengler is a resident of Chicago, Cook county, Illinois, and not a resident of Alberta, and that the Canadian administrator is therefore not entitled to the benefit of the Illinois statute, upon which his petition is based.

The section of the statute upon which petitioner relies has been construed by the courts of this State in *Langmuir v. Landes,* 113 Ill. App. 134, and *Parcher v. Reese,* 202 Ill. App. 509. In the *Langmuir* case it appeared that one Gerber, an alien who resided in Tazewell county in this State, was adjudged insane and committed to an asylum. Thereafter one Landes was appointed conservator and came into control of the real estate and personal property of his ward, the personal property amounting to more than $3,000. The father and other relatives of Gerber lived in the province of Ontario. Gerber escaped from the asylum and went there, his Illinois conservator consenting, and thereafter continued to reside in Ontario. He at times returned to his old home in Tazewell county unattended and after a short visit returned to Ontario, the Illinois conservator giving him such funds from time to time as his necessities required. Thereafter Gerber was adjudged insane in Ontario and committed to a public asylum and Langmuir was appointed committee of his person and estate and duly qualified. The Canadian

conservator filed a petition to have the property removed to the place of residence, and on appeal to the circuit court the prayer of the petition was denied. In the Appellate Court it was urged that the order should be affirmed because Gerber was then a non-resident alien and that upon his death the real estate would escheat to the State of Illinois, and, therefore, to grant the prayer of the petition would be contrary to the public policy of the State and prejudicial to its interests, and that, second, because the evidence fails to disclose that the best interests of Gerber required a removal of the property, or its proceeds to the place of his domicile. The Supreme Court described such policy as "a lawless selfishness" and refused to concede that the State would be influenced by such policy. As to the second point, the court stated that Gerber had become a bona fide resident of Ontario; that the court there had jurisdiction of his person and estate and was manifestly in a better position to understand and determine his best interests than the county court of Tazewell county, and reversed the order and remanded the cause.

In *Parcher v. Reese,* 202 Ill. App. 509, it appeared that Ella Tunison was adjudged insane in Christian county, Illinois, and committed to the State hospital for the Insane at Jacksonville, where she remained an inmate for more than five years. Reese was appointed her conservator in Christian county. Neither her relatives in Illinois nor her conservator ever visited her at Jacksonville. Her condition did not improve in the asylum, and in June, 1907, Mrs. Parcher, a sister, requested that she might be allowed to take her to her own home in Missouri and care for her there. The superintendent of the asylum advised and the county court of Christian county consented that her request be granted. Thereafter she remained with her sister in Missouri and was well cared for but remained insane

and incapable of taking care of herself. In 1915 Ella Tunison was adjudged insane in Missouri and Mrs. Parcher appointed guardian of her person and estate. Thereafter she filed in the county court of Christian county, Illinois, a petition praying for an order directing the Illinois conservator to turn over to her the estate of the ward, which consisted of more than $9,000 in notes and cash. The prayer of the petition was granted. The Illinois conservator appealed to the circuit court, and that court entered a similar order in favor of the nonresident guardian. In the Appellate Court it was argued that Ella Tunison was not and had not been a nonresident of the State and that therefore the provisions of the statute upon which the petition was based could confer no rights upon the petitioning conservator. The court said:

"While an insane person is conclusively presumed to be incapable of determining for himself where he will abide or hold his domicile, yet it has been held that if he has a conservator or guardian, his domicile or residence may be changed by the direction or assent of such officer, either expressly or impliedly given. *Holyoke v. Haskins,* 5 Pick. (Mass.) 20; *Anderson v. Anderson's Estate,* 42 Vt. 350; *Inhabitants of Pittsfield v. Inhabitants of Detroit,* 53 Me. 442; *Hill v. Horton,* 4 Dem. Surr. (N. Y.) 88; *Culver's Appeal,* 48 Conn. 165; *In re Jackson,* 15 Mich. 417. There are authorities holding a contrary view, but we are satisfied that the weight of authority is in accord with those cited."
The court also stated that while the courts of last resort in this State had not passed on the question, the Appellate Court in *Langmuir v. Landes,* 113 Ill. App. 134, had recognized as valid a change of residence from Illinois to Canada, and pointed out that the words "resident" and "nonresident" had different meanings according to the subject under consideration; that lunacy laws were enacted for the benefit of the un-

fortunate as well as for the public; that they were in their nature emergency laws and should be construed liberally to the end that their purpose might be effectuated, and continued:

" 'Nonresident' as used in paragraph 41 of the lunacy laws of this State (J. & A. par. 7325) should be construed to mean an insane person who is beyond the jurisdiction of the courts of this State and who has been taken before the courts of such other State and adjudged to be insane, and a guardian or conservator of his person and estate has been appointed by such court. In such cases the courts of this State should recognize the acts of such foreign courts as valid, and the guardian or conservator appointed by them as the guardian or conservator of a nonresident lunatic.'' The judgment was affirmed. These cases seem to be in harmony with the weight of authority. Restatement of the Law, Conflict of Laws, chapter 2, sec. 9.

While there are many facts in the present case which distinguish it from these we have analyzed, we are constrained upon the whole record to the view that Louis Spengler is a nonresident within the meaning of this statute. It is true, as Krumroy points out, that the record lacks any proof of any expression on the part of Spengler before or after leaving Chicago which would disclose his intention to make his home elsewhere, but this is not the only kind of evidence by which such an intention may be determined. The fact that he remained away continuously for three years without, so far as the evidence shows, communicating with his father and mother and that upon the entry of an order finding him insane he was not returned to the United States, as he would have been if his residence was in Chicago (see Statutes of Canada 1910, Immigration act, chap. 27, section 2D) but, on the contrary, was placed in a Canadian institution for care and treatment, would seem to be sufficient to shift the bur-

den of proof and require affirmative evidence tending to show an intention on his part to return. There is no such evidence in this record. Louis Spengler has been cared for in the Canadian hospital for more than 22 years. The record fails to show that he has communicated or attempted to communicate at any time with any of his relatives in Chicago. It fails to disclose that any of the relatives in Chicago have communicated or attempted to communicate with him, other than by causing a notice of the proceeding to have him declared insane by the probate court to be sent to Alberta. Most significant, there has not been up to this time any attempt on the part of any relative to secure his release or effect his return. It is a fair inference from all the evidence that if he had not acquired a residence in the Dominion of Canada he would upon the adjudication of his insanity have been returned to his native country. It is also fair to infer that his treatment there has been kind; at least, he seems to have survived all of his immediate family. The Canadian administrator, who has assumed his care, is upon every consideration of justice entitled to receive his estate; humanity, fair dealing and a reasonable construction of our statute seem to demand that he have it.

Since the opinion in the above cause was prepared, the death of Henry Krumroy, conservator of the estate of Louis Spengler, insane, and the appointment of John J. Madden, as successor, have been suggested, and an order entered continuing the cause in the name of John J. Madden, as conservator.

For these reasons the judgment of the circuit court is affirmed.

*Affirmed.*

McSURELY, P. J., and O'CONNOR, J., concur.