ALFRED KUPHAL, Plaintiff, *v.* AUGUSTA G. KUPHAL, Defendant.

Supreme Court, Westchester County, July 25, 1941.

*Winfred C. Allen,* for the plaintiff.

*Harold M. Miller,* for the defendant.

PATTERSON, J.   The special guardian for the defendant moves, as it was his duty to do under the circumstances, to dismiss the complaint on the grounds that the court has no jurisdiction either of the person of the defendant or of the subject-matter of the action.

The action was brought allegedly to annul, but in reality to dissolve, a marriage on the ground of the defendant's incurable insanity.   The facts are undisputed.   The parties, then residents of the State of New Jersey, were married there in June, 1920. They continued to live there as man and wife until February, 1932, when the defendant, with plaintiff's consent, was committed to the New Jersey State Hospital at Morris Plains, N. J., where she has since been confined.   The parties never resided together in the State of New York, nor has the defendant, at least since the marriage was celebrated, ever resided in this State.   The plaintiff, became a resident of New York State sometime in 1940; at least, it is not disputed that he has resided continously in this State for at least a year last past.   It, therefore, appears that New York State's only contact with the parties is the fact that plaintiff, subsequent to defendant's commitment, established a residence in this State.

Plaintiff's cause of action is brought pursuant to subdivision 5 of section 7 of the Domestic Relations Law, the caption of which is " Voidable Marriages."   The section provides that actions to annul a void or voidable marriage may be brought only as provided by the Civil Practice Act and the Rules of Civil Practice.   It will be observed that the section does not, of and by itself, define the jurisdictional requirements for the maintenance of an action of this nature.   It does provide that it should be brought in accordance with the Civil Practice Act and the Rules of Civil Practice.   Section 1146-a of the Civil Practice Act provides for conditions attached to the maintenance of an action to *annul* a marriage; the instant action is not one to annul but to dissolve.

That section provides, so far as here relevant, that the action in question may be maintained where the parties were married without the State and either the plaintiff or defendant is and has been a resident of the State one year when the action is commenced. These facts, concededly, are here present. It would, therefore, seem that the Legislature intended that the jurisdictional requirements to maintain an action to void a marriage on the ground of incurable insanity are present when the parties were married without the State and either of them has been a resident of the State one year when the action is commenced, and this, notwithstanding the fact that the section employs the words " to annul," instead of " to dissolve," a marriage, because nowhere else in the Civil Practice Act is there any provision for the maintenance of an action to dissolve a marriage. It is the defendant's position that the plaintiff's action is not for the annulment of a marriage within the meaning of the Civil Practice Act, and, hence, subdivision 3 of section 1146-a of the Civil Practice Act is not applicable.

It is agreed by all parties that the action is not one to annul a marriage but one to dissolve. The theory of an annulment action is that a valid marriage never came into existence. Here the plaintiff's cause of action is based upon a cause accruing subsequent to the marriage, and, hence, is an action to dissolve a marriage validly contracted, for cause recognized by law arising after the inception of the marital relationship. The question, then, here presented is, has this court jurisdiction to grant an order dissolving this marriage.

The Legislature has not specified any jurisdictional requirements for instituting actions of this particular type, nor has it said that the marriage must have been contracted here. The Legislature did say that such a marriage is void from the time its nullity is declared by a court of competent jurisdiction.

It is well settled that in every matrimonial action there must be jurisdiction *in rem* over the marital status in addition to jurisdiction *in personam*. It is an action where the domicile of the husband is *prima facie* the domicile of the wife. Theoretical identity of person and of interest between husband and wife is the reason therefor. The home of the one is the home of the other and the duty of the wife is to dwell with the husband. The general proposition is well settled that where the plaintiff has acquired a *bona fide* domicile in a State he may appeal to its courts for dissolution of his marriage for causes permitted by its statutes. This seems to be the clear holding in *Haddock* v. *Haddock* (201 U. S. 562). Each State has a right to determine for itself on what grounds the relation of marriage between the parties domiciled

within its territory may be dissolved and it may prescribe what legal proceedings may be had to that end.

To sustain her contention that the courts of this State have jurisdiction neither of the person of the defendant nor the subject-matter of the action, the defendant relies largely, if not wholly, upon the recent authority of *Ambruster* v. *Ambruster* (170 Misc. 387). If the holding of that case is to be here adopted, it would seem that the defendant is entitled to prevail, but in the absence of appellate approval, I am unwilling to follow that case as authority.

In the *Ambruster* case (*supra*) the court held that although the plaintiff could establish a separate domicile in this State, nevertheless, by his so doing the marital status did not become subject to the jurisdiction of the courts of this State, when it said that result may only be accomplished by virtue of something the non-resident spouse has done either by consenting to the acquisition of a separate domicile or by misconduct which precludes objection to the acquisition of such separate domicile. Of course, here she could not consent by reason of her insanity and no misconduct is claimed. The court, in the *Ambruster* case, apparently relied upon section 113 of the Restatement of the Law of Conflict of Laws. Section 113 of the Restatement presupposes the non-existence cf the marital domicile in a particular State and restricts the conditions prerequisite therein specified to those cases wherein spouses are domiciled in different States. It is only where their consent or misconduct is necessary to confer jurisdiction that the one or the other of those factors becomes a jurisdictional fact. Certainly, the position of the plaintiff resolves itself into the proposition that the husband whose conduct is blameless must nevertheless either procure his wife's consent or establish her misconduct as a condition prerequisite to removing the matrimonial domicile of the parties to another State. I can find no authority for that comprehensive conclusion.

I think vitality must be given to a husband's *prima facie* continuing right to establish and to change the matrimonial domicile rather than upon the wife's consent or misconduct. Of course, the husband's own misconduct may operate to defeat his fundamental right to establish and to shift the matrimonial domicile.

I can see no authority other than the *Ambruster* case that in the case where a wife, not a resident of this State, becomes incurably insane, the matrimonial domicile must forever remain in the State of her then residence.

The wife is incapable by law of acquiring for herself a separate domicile except and unless as above stated, namely, the husband, by reason of misconduct, forfeits his right to fix the matrimonial domicile.

An incompetent cannot establish a domicile other than that existing at the time his incompetency was adjudged, but his committee can change or can consent to a residence for such incompetent in some other place; the same rule, of course, applies in cases involving infants and their guardians. An insane person who is committed to an asylum does not acquire a domicile in such asylum.

The plaintiff well argues the domicile of a mentally incompetent person must of necessity be fixed for him or her by some appropriately or legally related person and such domicile may be shifted from one place to another by such person; the consent of the mentally incompetent is not in any degree a factor in the situation. The domicile of a mentally incompetent does not become static at the place of his residence at the time he was adjudged incompetent.

Plaintiff invokes *McKnight* v. *Dudley* (148 Fed. 204) as authority by analogy for his contention that the matrimonial domicile of the wife follows that of the husband. The reasoning there employed is unique and interesting. It was there held that upon the insanity of the husband and his confinement in an asylum, his wife becomes the head of the family and can change her place of residence to another State regardless of the fact that her husband remains in confinement in the State of her former residence, and the wife, now the head of the family, can shift the matrimonial domicile to another State.

I think the above authority is properly invoked here. As has been pointed out, the husband may remove his wife from the New Jersey asylum to one in this State in pursuance of the well-recognized right of a committee of a married incompetent to transfer the latter's domicile. Can it then be said that he would not thereby change the matrimonial domicile of the wife to this State?

It is my opinion that upon the principle of the *prima facie* continuing right in a husband both to fix and to shift the matrimonial domicile and the legal principle that the domicile of a mental incompetent must be fixed by some other properly qualified person exercising control over such incompetent, the matrimonial domicile of the defendant is now in New York State and that thereby this court has acquired jurisdiction in the premises of both the person of the defendant and the subject of the action.

I, therefore, deny the motion for dismissal of the complaint.