Estate of Ellen V. Loeffler, Incompetent.
Bank of America National Trust and Savings Association
of Pomona, California, Petitioner-Appellant, v. Es-
tate of Ellen V. Loeffler, Incompetent, Oak Park
Trust and Savings Bank, Respondent-Appellee.

Gen. No. 50,967.

First District.

January 24, 1968.

Lowitz, Vihon, Lowitz, of Chicago (Donald S. Lowitz
and Theodore G. Gertz, of counsel), for appellant.

Herrick, Vette, McNeill & McElroy, of Chicago (Moore
W. Peregrine of counsel), for appellee.

TRAPP, J.

Bank of America National Trust and Savings Associa-
tion of California, a California appointed conservator
of the estate of Ellen V. Loeffler, appeals from an order
of the Circuit Court of Cook County, Probate Division,
denying a petition of said Bank for transfer to it of the
assets of Ellen V. Loeffler, incompetent, for administra-
tion in California.

Rita M. Jagnow, an only daughter, had been appointed
conservator of the person of her mother, Ellen V. Loeffler,
and the Oak Park Trust and Savings Bank had been ap-

pointed conservator of the estate of said ward by the Illinois Court. The ward was residing in a nursing home in Illinois. Thereafter, on February 21, 1964, the daughter, Rita M. Jagnow, took her mother by airplane to California, and placed her in the Golden Nursing Home in Pomona, California. In June, 1964, the daughter was, on her own petition, appointed guardian of the person of her mother, and Bank of America National Trust and Savings Association was appointed guardian of the estate of the incompetent by the Superior Court of the State of California, San Bernadino County.

The California bank obtained permission of the California court to petition the Illinois court for transfer of the assets, which are somewhat in excess of $300,000, to California.

The petition, now under consideration, was filed December 29, 1964, and alleged among other things, (1) that Ellen V. Loeffler, incompetent, has been physically present in California since February 21, 1964, and resides in the Golden Age Rest Home under the supervision of the guardian of her person, Rita M. Jagnow, (2) that the ward is in good physical condition and appears happy and content living in the nursing home in close proximity to her daughter, Rita M. Jagnow, (3) that the guardian of the person intends to remain with the ward in California permanently, (4) that the property of the ward in the State of Illinois, held by the Oak Park Trust and Savings Bank, may be removed to the State of California without conflict with any restriction thereupon, and without impairing the right of the ward thereto, and (5) that it would be to the best interest of the ward that her entire estate be administered by petitioner under the supervision of the Probate Court of San Bernadino County, California.

The answer to the petition alleges, (1) admits that the ward is physically present in California but asserts that the ward was removed there without consent of the ward,

305

was there for medical treatment only, and was, at the time of the appointment of the California guardians of the estate and person, a resident of the State of Illinois, (2) denies the validity of the orders of the California court appointing guardians of the person and property (a) because of the Illinois residence of the ward and (b) because the California orders fail to give full faith and credit to the previous Illinois orders, (3) asserts that the ward was mentally incapable of changing her residence, and (4) denies that it would be to the best interest of the ward to transfer the property to California.

The respondent filed a petition to have a psychiatrist appointed by the court to determine whether the ward had the mental capacity to change her residence, and asserted that lacking mental capacity the ward could not change her residence.

The statutory provision under which the petitioner seeks a transfer of the assets, chapter 3, § 264 (Ill Rev Stats) is as follows:

> "When it appears to the probate court of any county of this state in which a guardian or conservator of the estate of a non-resident ward is appointed that the removal of the ward's estate will not conflict with the interest of the ward, the terms of limitation attending the right by which the ward owns the estate, or the rights of creditors, the probate court may order the resident guardian or conservator to pay and deliver to the non-resident guardian or conservator the whole or any part of the ward's estate. The order shall be entered only upon the verified petition of the non-resident guardian or conservator and the production of authenticated copies of his letters and of the order of the court which issued letters to him authorizing him to collect, receive, and remove the personal estate. Unless excused by the probate court for good cause shown, ten days' notice

of the hearing on the petition shall be given to the resident guardian or conservator."

At the time of the hearing on the petition of respondent for the appointment of a psychiatrist, and prior to the date set for hearing on the merits of the petition of the California bank to transfer the assets, the trial court after considerable argument by counsel, but without hearing any evidence, denied the petition for appointment of a psychiatrist and denied the petition for transfer of the assets to the California conservator.

All parties agree that unless the ward is, in fact, a nonresident, there is no authority for an order under chapter 3, § 264 (Ill Rev Stats) to transfer the assets.

Petitioner concedes that the ward did not have the mental capacity to change her own domicile, and accordingly the appointment of a psychiatrist to determine this issue would have been an unnecessary expense. In order to reach the issue of what would be the best interest of the ward it is first necessary to determine the residence of the ward.

Since there was no hearing of evidence which would permit the court to validly determine whether the residence of the ward was, in fact, changed, or what was the best interest of the ward in the matter of transfer, the court's order, in effect, held that as a matter of law the residence of an incompetent could not be changed on the initiative of the conservator of the person, and that since the ward was not competent to change her residence on her own volition, the status of Illinois residence could not be changed.

The case of Parcher v. Reese, 202 Ill App 509, while conceding that an incompetent person is incapable of changing his domicile of his own volition, nevertheless holds that a person's "residence" for the purpose of the statute before us may become changed, and that the significant factor in this change is the determination of

the guardian of the person. Of like effect is Langmuir v. Landes, 113 Ill App 134. The court in In re Estate of Spengler, 282 Ill App 607 at 613, held that the residence might be changed with the assent of the conservator. This case is construed in 96 ALR2d 1284 to be a case of effective change by a guardian without court order.

We are not directed to any provision of the statute which requires a conservator of the person to apply to a court to change the residence of an incompetent, even though it may be conceded that this might be a desirable practice. From a reading of the opinions in Parcher v. Reese, 202 Ill App 509, and Langmuir v. Landes, 113 Ill App 134, we also gather an attitude that prima facie, it is to the best interest of the ward to have the supervision of the person and property conducted by the same court. Normally, it would appear to be more efficient, and more to the interest of the ward, to have the person who is charged with the custody of the person of the ward in close touch with the court and the person or institution administering the property. We also take an inference from the frame of the statute that while the language of chapter 3, § 264 (Ill Rev Stats) is "may order," the sentence structure suggests that the court "should" order the transfer to the guardian of the place of actual residence *unless* such order would conflict with the interest of the ward, the limitations under which the property is held or the rights of creditors.

If there is no conflict with regard to rights of creditors, the welfare of the ward should be the foremost consideration of the court. It is the sense of the decided cases in Illinois that if the person who is charged with the responsibility of the care of the person of the ward is, in fact, discharging that responsibility for the benefit of the ward, such person may change the residence of the ward and make the ward's residence the same as the conservator's residence. It is not necessary to pass

upon the matter of domicile in the sense of citizenship, but only upon the matter of residence within the meaning of chapter 3, § 264 (Ill Rev Stats).

Evidence would be required to establish whether the conservator in this case has, in fact, established her own residence and the residence of the ward in the State of California. While the cases relied upon in fact involved quite a number of years of residence, no reason is perceived why a settled or "permanent" state of affairs cannot be established in a relatively short period of time such as that involved in this case. The conservator of the person in this case is an only daughter and the ward is an elderly mother. If the daughter is established in, or intends permanently to reside in California, it would seem most logical that in caring for the needs of her mother there would be the greatest benefit in moving the latter to a place where the former can visit frequently. If the evidence upon the question of residence establishes the fact that the incompetent is a resident of California for the purpose of this statute, it should not be difficult to establish by evidence whether the transfer would "conflict with the interest of the ward, the terms of limitation attending the right by which the ward owns the estate or the rights of creditors."

It is asserted that by reason of the failure of counsel to introduce evidence on the matter of the best interest of the ward, there has been a waiver of the right to pursue this question. Our reading of the record in this matter discloses rather that the trial court made it clear to counsel that it had determined that the incompetent could not have been a nonresident and that pursuit of the second inquiry would therefore be futile.

Our view is that it would be presumed to be to the best interest of the incompetent, and that the transfer should be made unless it were shown by the party resisting the transfer, or it otherwise appeared to the

court from the evidence, that an order of transfer would conflict with one of the three qualifications set forth in the statute.

The trial court's order is reversed and the cause remanded for the taking of evidence and further proceedings in accordance with the views expressed in this opinion.

Reversed and remanded.

SMITH, P. J. and CRAVEN, J., concur.