656

[Civ. No. 25064. First Dist., Div. One. Feb. 14, 1969.]

Estate of CHARLES P. PHILLIPS, Deceased. COUNTY BANK OF SANTA CRUZ, as Executor, etc., Petitioner and Respondent, v. LAURA VERVERS, Individually and as Conservator, etc., Objector and Appellant.

Adams & Levin, Dennis J. Kehoe and Robert A. Holstein for Objector and Appellant.

Robert G. Fife, Lucas, Wyckoff, Miller, Stanley & Scott and Thomas L. Prosser for Petitioner and Respondent.

MOLINARI, P. J.—This is an appeal from an order admitting decedent's will to probate, overruling objections and granting letters testamentary. Appellant is a niece of decedent and the conservator of his person and estate by appointment of the Circuit Court of Cook County, Illinois. Respondent is executor of the will of decedent admitted to probate in this proceeding. The primary question on appeal is whether or not decedent, who had been adjudicated an incompetent in Illinois, had the legal capacity to voluntarily change his residence from Illinois to Santa Cruz, California.[1]

Charles P. Phillips, the decedent, was adjudicated an incompetent in the Circuit Court of Cook County, Illinois, on June 19, 1964, and appellant, Laura Ververs, was appointed conservator of his estate and his person at that time. The action of the Illinois court was taken as the result of a petition filed by appellant in which she alleged that decedent was ''incompetent and incapable of managing his estate (and person), in that [sic] is mentally deficient, physically incapacitated and mentally deteriorated and in addition is 74 years of age and has attempted on various occassions [sic] to take his own life.''

In November 1965 decedent visited his brother John in Aptos, California, and during his one-month stay he mentioned that he thought he would like to come and live in California. The two brothers then investigated available retirement accommodations in Santa Cruz. Decedent returned

---

[1] The appeal is on the clerk's transcript alone; and all of the evidence is in the form of sworn declarations. Neither party questions this procedure on appeal. (See *Estate of Fraysher*, 47 Cal.2d 131 at p. 135 [301 P.2d 848] where the court stated: ''Ordinarily, affidavits may not be used in evidence unless permitted by statute. . . . But this is a different situation in that the parties did not object to the use of affidavits in evidence, and both parties adopted that means of supporting their positions.'' See also *In re O'Brien Machinery, Inc.*, 224 Cal.App.2d 563, 569 [36 Cal.Rptr. 782].) Section 1233 of the Probate Code provides that an affidavit must be received in evidence when offered in any *uncontested* probate proceedings.

to Illinois without having reached a decision concerning his residence; but in May 1966 he contacted his brother John and requested that he find accommodations in Santa Cruz and subsequently appropriate arrangements were made with a retirement hotel. After disposing of an automobile in Illinois and giving up his apartment in that state, decedent arrived in California on May 16, 1966, bringing with him his clothes and other personal effects. Shortly after his arrival in California, decedent opened a bank account in a Santa Cruz bank, making an initial deposit of $1,001.47. On several occasions decedent informed his brother John that he liked California and expected to stay here for the remainder of his life. He also told his attorney that he considered himself a resident of California and that he would prefer not to return to Illinois for any purpose. The brother, as well as both the physician and attorney consulted by decedent, found him to be alert and well oriented at all times.

On March 24, 1967, decedent executed a formal will which included a statement that although he was at one time a resident of Illinois ''I have now changed my domicile and residence to the State of California.''[2] The terms of the will specifically revoked a will made in July 1964 and named the respondent bank as executor. On April 12, 1967, decedent died in a Santa Cruz hospital at the age of 76 and thereafter on April 17, 1967, respondent offered the 1967 will for probate in the Superior Court of Santa Cruz County. Through her attorneys appellant appeared specially on May 5, 1967, and filed objections to the petition for probate of the will. In her objections appellant claimed that the court had no jurisdiction because decedent left no property in the County of Santa Cruz and was not at any time a resident of that county. Appellant contended that decedent as an incompetent did not have the capacity to change his place of residence and additionally stated that the July 1964 will naming appellant as executrix had been filed for probate in Illinois. In her affidavit in support of the objections, appellant stated that decedent's trip to California in 1966 was for a temporary visit for therapeutic purposes because decedent was in an extremely depressed mental state; and that it was the intent of appellant that decedent would return to Illinois whenever his mental and physical condition had sufficiently improved.

---

[2]Pending preparation of his formal will, decedent also made and signed a holographic will in which he stated that he lived in Santa Cruz County.

The superior court overruled the objections of appellant and found that decedent was in fact a resident of the County of Santa Cruz, State of California, and admitted the will dated March 24, 1967 to probate and appointed respondent as executor.

Appellant argues that because decedent had been previously adjudicated an incompetent, he did not have the legal capacity to change his residence from Illinois to Santa Cruz County, California, and that consequently the court did not have jurisdiction to admit the will to probate. No California cases have been found which decide this precise question which is apparently a matter of first impression. The pertinent California statute governing jurisdiction is Probate Code section 301 which provides in part: "Wills must be proved, and letters testamentary or of administration granted and administration of estates of decedents had, in the superior court: (1) Of the county of which the decedent was a resident at the time of his death . . . ."[3] Initially, we note that the word resident as used in this section connotes a "residence" which is synonymous with "domicile." (*Smith* v. *Smith*, 45 Cal.2d 235, 239 [288 P.2d 497]; *Estate of Glassford*, 114 Cal.App.2d 181, 186 [249 P.2d 908, 34 A.L.R.2d 1259]; *Estate of Brace*, 180 Cal.App.2d 797, 802 [4 Cal.Rptr. 683].) Next we observe the well-established rules that "The acquisition of a new domicile is generally understood to require an actual change of residence accompanied by the intention to remain either permanently or for an indefinite time without any fixed or certain purpose to return to the former place of abode" (*DeYoung* v. *DeYoung*, 27 Cal.2d 521, 524 [165 P.2d 457]; *Estate of Glassford, supra*, at p. 186); and that in determining the fact of such intention, the acts and declarations of the party must be taken into consideration. (*Guardianship of Mosier*, 246 Cal.App.2d 164, 172 [54 Cal.Rptr. 447]; *Whitlow* v. *Durst*, 20 Cal.2d 523, 524 [127 P.2d 530].) Further, we note that "The question of residence or domicile is a mixed question of law and fact, and the determination of the trial court, upon conflicting evidence,

---

[3]The section continues "(2) Of the county in which the decedent died, leaving estate therein, he not being a resident of the state; . . ." Respondent argues that even if it should be decided that decedent was not a resident of the county, the will should be admitted to probate because decedent's brother in his declaration stated that there was a balance of over $900 in the checking account at decedent's death, and the court adjudged that decedent left an estate in California. A review of the record indicates that this approach was not argued before the trial court.

is conclusive upon this court. [Citations.]" (*Estate of Peters*, 124 Cal.App. 75, 77 [12 P.2d 118]; *Bradley* v. *Davis*, 156 Cal. 267, 268 [104 P. 302].) ▮▮▮ In the instant case, there was ample evidence before the trial court that decedent intended to make Santa Cruz County his domicile, but appellant does not actually question this intent of decedent. Since appellant contends only that decedent had no capacity to change his domicile, she completely disregards the question of intent in her argument.[4]

Adverting, then, to the crucial question presented, we note that there is a diversity of authority in this country as to whether a person who has been previously adjudicated to be incompetent has the capacity to change domicile.[5] The majority view appears to be that reflected in the principle which is stated in section 40 of the Restatement of the Law, Conflict of Laws, as follows: "A person who is mentally deficient or of unsound mind can acquire a domicile as if he had normal mental capacity if he is able to choose a home."[6] In comment a. to this section it is stated that "It is in every case a question of fact whether a person who is mentally deficient or of unsound mind is able to choose a home"; and in comment g. the effect of the appointment of a guardian is discussed thusly: "If a person of unsound mind becomes sane or becomes able to choose a home, he may, if he is of full age, thereafter acquire a domicile of choice notwithstanding the fact that a guardian of his person has been appointed."[7]

In Goodrich, Conflict of Laws (4th ed. Scoles), at page 60, this eminent authority on conflict of laws states: "It has been recognized that, while a person may not be capable of doing some acts, as making a contract, yet he may have a

---

[4]As noted, in her declaration, appellant stated it was not *her* intent to change residence of decedent.

[5]See 96 A.L.R.2d 1236 and cases there cited and analyzed.

[6]The section of the Restatement has been cited in one California case, but the citation involves only the application of the section to a minor incompetent who later comes of age. (See *Mauro* v. *Department of Mental Hygiene*, 207 Cal.App.2d 381, 388 [24 Cal.Rptr. 505].) Respondent argues that this citation implies California approval of the view of the Restatement.

[7]The rule of the first Restatement has been carried forward into the Proposed Official Draft of the Restatement of the Law Second, Conflict of Laws. This draft was published on May 2, 1967, and the matter of the domicile of a mentally deficient individual is covered in section 23. Comment a. to the section explains that "The crucial question is whether the person has sufficient mental capacity to choose a home. That he may be incapable of managing his own affairs is not conclusive; nor is the fact that he has been adjudged incompetent and a guardian appointed over his person or property."

sufficient degree of understanding to change his domicile. There is reason in the distinction. In making a contract, the obligor must exercise capacity to assume a burden, . . . making himself liable. In changing domicile, the actor merely subjects himself to the operation of the legal system of the new jurisdiction—a system that must be presumed to guard rights and privileges and to operate equally upon all. The test is said to be whether the party had sufficient reason and understanding to choose his place of residence. He may do so even though a guardian has been appointed for him.'' (See also *Hsu* v. *Mt. Zion Hospital,* 259 Cal.App.2d 562, 573, at fn. 5 [66 Cal.Rptr. 659].)

The rule espoused in the Restatement has been followed in Arizona (*In re Sherrill's Estate,* 92 Ariz. 39, 43 [373 P.2d 353, 356]), Florida (*Matthews* v. *Matthews,* 141 So.2d 799, 801-802 [96 A.L.R.2d 1231]; see also *McNeill* v. *Harlow,* 81 Fla. 401 [88 So. 127]), Indiana (*Hayward* v. *Hayward,* 65 Ind. App. 440, 450 [115 N.E. 966, 969, 116 N.E. 746]), Massachusetts (*Talbot* v. *Chamberlain,* 149 Mass. 57, 59 [20 N.E. 305, 306-307, 3 L.R.A. 254]), Oklahoma (*Groseclose* v. *Rice,* 366 P.2d 465, 468), Texas (*Ferguson* v. *Ferguson,* 128 S.W. 632), Vermont (*In re Hanrahan's Will,* 109 Vt. 108, 127 [194 A. 471, 480-481]), and in the federal courts (*Coppedge* v. *Clinton,* 72 F.2d 531, 533; *Foster* v. *Carlin,* 200 F.2d 943, 946.[8]) Only cases from New York (*In re Curtiss,* 199 N.Y. 36, 41 [92 N.E. 396, 398, 29 L.R.A. N.S. 780]; *Kuphal* v. *Kuphal,* 177 Misc. 255, 259 [29 N.Y.S.2d 868, 872]), and possibly from Georgia (*Stanfield* v. *Hursey,* 36 Ga.App. 394, 395 [136 S.E. 826, 827][9]), and Virginia (*Commonwealth* v. *Kernochan,* 129 Va. 405, 411-412 [106 S.E. 367, 369, 30 A.L.R. 601][10]) appear to stand for the contrary rule that the adjudication is conclusive on the question of the incompetent's incapacity to change domicile.

---

[8] In the federal cases, it was held that although one who has been adjudged incompetent may change his domicile if he has acquired sufficient understanding and mental capacity to make an intelligent choice of domicile, the burden of proving the acquisition of such capacity is on him who alleges it.

[9] In this case, although the court seems to say that the adjudicated incompetent cannot change his domicile, it also appears to lean towards the rule of the Restatement when it states that the incompetent was at least prima facie incapable of changing his domicile.

[10] It is doubtful whether this case follows the rule stated in the New York cases because in *Kernochan* the court specifically noted that the incompetent could not change her domicile because she lacked the mental capacity to do so.

Of particular interest in the determination of the instant case is *In re Sherrill's Estate, supra.* There the decedent had been adjudged an incompetent in Arizona and later removed to Oklahoma although the Arizona guardianship had not been formally concluded. The court held that if the incompetent after his adjudication regains the capacity to form an intention to change his domicile, he could make the change without judicial determination of his capacity. Likewise, in *Groseclose* v. *Rice, supra,* 366 P.2d 465, a case involving the same decedent, the Oklahoma court rejected the proposition that the incompetent could not change his domicile without the permission of the Arizona guardian.[11]

Also of interest is *Matthews, supra.* There the plaintiff husband escaped from a Virginia hospital after adjudication as a mental incompetent, moved to Florida where he lived for more than four years, and was adjudged mentally incompetent by the Florida court just prior to this divorce action. The court rejected the contention of the defendant wife that the plaintiff was precluded from changing his domicile because he was adjudged at one time to be of unsound mind.

Adverting to Illinois law, we note that no opinion of that state directly decides the question presented by this appeal, nor does the incompetency statute of that state prescribe any responsibility of the conservator in establishing or maintaining the residence of the incompetent.[12] Several Illinois cases, however, have been called to our attention touching on the question of the domicile of an incompetent. We note, initially, that most of these cases have been basically concerned with the application of the Illinois "turnover statute" (ch. 3, Ill.Rev.Stats., § 264) which allows a resident guardian or con-

[11]The situation of the decedent in *Sherrill* and *Groseclose* was somewhat different from the instant case because incompetency proceedings had been had in each state and two guardians had been appointed.

[12]With respect to the power of the guardian to change the incompetent's domicile, we note that some cases hold that, in the absence of any indication of a contrary intention on the part of the appointing court, the incompetent will be held domiciled in the state where he was sent by the guardian to live and make his home if the change in domicile was made for the best interests of the incompetent, and not for the purpose of achieving some selfish purpose of the guardian (see *Coppedge* v. *Clinton, supra,* 72 F.2d 531; *Grier* v. *Grier's Estate,* 252 Minn. 143 [89 N.W.2d 398]; *Kuphal* v. *Kuphal, supra,* 177 Misc. 255 [29 N.Y.S.2d 868]; *Matter of Kassler,* 173 Misc. 856 [19 N.Y.S.2d 266]); and we note that in others it is held that the guardian may not fix the incompetent's domicile outside the state without the express permission of the appointing court. (See *Foster* v. *Carlin, supra,* 200 F.2d 943; *Chew* v. *Nicholson,* 281 F. 400; *Hayward* v. *Hayward, supra,* 65 Ind.App. 440 [115 N.E. 966, 116 N.E. 746]; *Commonwealth* v. *Kernochan, supra,* 129 Va. 405 [106 S.E. 367.)

servator to turn over the estate of a nonresident ward to a nonresident guardian under certain conditions. The most recent of these cases is *In re Estate of Loeffler's*, 91 Ill.App. 2d 304 [234 N.E.2d 1]. In this case an Illinois court had appointed a daughter as conservator of the person of her incompetent mother and an Illinois bank as conservator of the estate. Subsequently the daughter took the mother to California where she was appointed guardian of the person and a California bank was appointed guardian of the estate. The Illinois court ruled that the residence of the mother could be changed on the initiative of the daughter and that the Illinois assets should be transferred to California under the turnover statute. Although the statement was not essential to the decision, the court noted, in passing, that the earlier case of *Parcher* v. *Reese*, 202 Ill.App. 509, had conceded that an incompetent person is incapable of changing his domicile of his own volition. (*In re Estate of Loeffler's, supra*, at pp. 3-4.)

In *Parcher, supra*, a person who had been adjudicated insane in the Illinois court was taken to Missouri by Parcher with the consent of Reese, the Illinois conservator and with the consent of the Illinois court. Later Parcher was appointed guardian in Missouri and sued to collect the Illinois estate of the insane person. The court agreed that the incompetent was a nonresident within the meaning of the turnover statute. In the course of its decision the court made the statement that "an insane person is conclusively presumed to be incapable of determining for himself where he will abide or hold his domicile, . . ." (202 Ill.App. at p. 512.) Appellant relies on this language to support her position that decedent could not choose to live in California. However, it can be noted that the statement of the court was not essential to its decision and further, in *Parcher* the court was clearly dealing with an insane person who did not have sufficient mental capacity to adopt a new domicile.

In *Loeffler's, supra*, it was conceded that the ward did not have the capacity to change her own domicile. Moreover, appellant does not specifically rely on *Loeffler's* for the proposition that an incompetent cannot change his domicile. Rather, she looks for support of her general contention in the conclusion of the court that it is in the best interest of a ward to have the supervision of his person and property conducted by the same court. However, this reasoning of the Illinois court in this regard would seem to have little to do with the precise case before us, since the record indicates at no time

was the supervision of the person and property of the decedent truncated by court action.[13]

*In re Estate of McCormick,* 260 Ill.App. 36 [revd. on other grounds, 345 Ill. 461 [178 N.E. 195, 77 A.L.R. 1215]], a case relied on by appellant, involved the change of residence of an insane person without the exercise of any volition on his part. Although not faced with the question of the voluntary choice of a new domicile by a person adjudged to be an incompetent, the court stated that ''it is the established law in this state, as well as in other jurisdictions, that the physical removal of an incompetent adult from place to place does not affect his domicile, residence or citizenship.'' (*Supra,* at pp. 42-43.) However, the cases cited by the court for this dictum primarily stand for the rule that when a pauper is sent to the county poorhouse his residence does not change.[14]

After a detailed review of the Illinois authority cited to us by both parties, we conclude that the basic question as to whether an adjudicated incompetent may choose his own domicile if the facts show him to be capable of selecting a home is still open in that state. Although in one context or another Illinois courts have indicated by way of dictum that an incompetent cannot change his domicile, we have no true indication as to what decision would be reached if those courts were presented with the precise question before this court. In any event, it is our responsibility to decide whether decedent was a resident within the meaning of Probate Code section 301 and consequently our chief duty is to evaluate the question in terms of California law. The adjudication of

[13]Appellant argues that the California court must recognize the status of incompetency as fixed until the individual is restored; citing *Gibson* v. *Westoby,* 115 Cal.App.2d 273, 276 [251 P.2d 1003]. However, respondent does not in any way question the status of decedent as an incompetent. Rather, it is the contention that an adjudicated incompetent is capable of changing domicile.

[14]Appellant and respondent also cited early cases dealing with the responsibility of local governments to support paupers. For example, in *Town of Freeport* v. *Board of Supervisors* (1866) 41 Ill. 495, the court concluded that paupers placed in the county poorhouse did not by that move lose their residence in the town. To like effect is *Clark* v. *Robinson* (1878) 88 Ill. 498. In both these cases the change of residence or domicile was under the control of others and not a matter of volition on the part of the paupers. In the case of *Langmuir* v. *Landes,* 113 Ill.App. 134, an ''alien'' incompetent living in Illinois was adjudged insane by the Illinois court in 1876 and was confined to an institution. He later escaped and went to Canada where he lived with the consent of the conservator appointed by the Illinois court. His Canadian conservator sued to remove his property from Illinois and the Illinois court agreed, finding that the incompetent was a resident of the province of Ontario.

the incompetency of decedent in Illinois is in no way under attack in this case; the only question is the proper jurisdiction of the California superior court over the will of a domiciliary.

 We conclude, therefore, that the weight of decision in this country favors the view that an adjudicated incompetent is capable of changing his legal domicile if he has sufficient mental capacity to choose and adopt a new domicile. We are persuaded by the rationale underlying this rule that the rule should be applicable in this state. In the instant case there is substantial evidence, as demonstrated from his acts, declarations and general conduct, that decedent had sufficient understanding and mental capacity to make an intelligent choice of this state as his domicile. Accordingly, under familiar rules applicable to appellate courts we cannot disturb the determination of the court below.

It should be noted, moreover, that although there are no California cases directly deciding whether an incompetent can legally change domicile, a number of cases stand for the principle that the mere fact of adjudication of incompetency does not justify a finding of lack of testamentary capacity in the absence of other evidence. (See *Estate of Nelson,* 227 Cal.App.2d 42, 55-56 [38 Cal.Rptr. 459]; *Estate of Wynne,* 239 Cal.App.2d 369, 373 [48 Cal.Rptr. 656]; cf. *Hsu* v. *Mt. Zion Hospital, supra,* 259 Cal.App.2d 562, 573, fn. 5.) As it was stated in *Estate of Johnson,* 200 Cal. 299, 305 [252 P. 1049] : "Proof of incompetency in a guardianship proceeding is evidence of mental condition on the date of the adjudication but it is not *prima facie* evidence of testamentary incapacity so as to shift the burden of proof to the proponent of the will. [Citations.]" (See also *Estate of Worrall,* 53 Cal. App.2d 243, 247 [127 P.2d 593].) By analogy it can be maintained that if an incompetent has the capacity to make a valid will under certain circumstances, he may also have the capacity to decide the place of his domicile if he is otherwise mentally alert and capable of choosing his home.[15]

Our conclusion makes it unnecessary to discuss the suggestion of respondent that jurisdiction might be founded on the presence of assets in Santa Cruz County. Likewise, we need not consider the suggestion made by appellant in her closing

---

[15]Cases in Illinois are to the same effect on the question of the testamentary capacity of an adjudicated incompetent. (*In re Estate of Weedman,* 254 Ill. 504 [98 N.E. 956]; *Lewandowski* v. *Zuzak,* 305 Ill. 612 [137 N.E. 500].) The Illinois authority is such that if the 1967 California

brief that the case be remanded for specific findings as to the requisite intent on the part of decedent. A finding of such intent was implied in the court's finding of residence and was amply supported by the evidence before the court.[16]

The order is affirmed.

Sims, J., and Elkington, J., concurred.

---

will were presented for probate in Illinois it would very likely be *effective* to revoke the 1964 will. The record indicates that only the 1964 will was presented for probate in the Illinois court.

[16]Appellant also suggests that a finding on the question of consent of conservator was also required, but cites no authority.