## RICHARDS v. HUFF.

No. 19715. Opinion Filed Dec. 2, 1930.

Sullivan & Rice, for plaintiff in error.

W. A. Wright, C. O. Harris, and Bond & Bond, for defendant in error.

REID, C. J. C. Huff died in Stephens county, Okla., September 14, 1921, leaving his wife, Eva Huff, now Richards, and his mother, Rebecca Huff. Soon thereafter Mrs. Huff began proceedings in the county court of Tom Green county, Tex., at San Angelo, to probate a will alleged to have been made

by Huff on or about October 25, 1918, at San Angelo. It was alleged that the will was accidentally destroyed by fire on or about July 20, 1919, while left by Huff in the possession of the attorney who prepared the will. Mrs. Richards objected to the probate of this purported will. The matter was heard in the county court and appealed to the district court of Tom Green county. It seems that, in the meantime, Mrs. Richards had begun proceedings in the county court of Stephens county, Okla., to probate a will alleged to have been made by Huff subsequently to the Texas will, and for this reason, and recited these facts in her application, she withdrew from the proceeding in the Texas court, and that court admitted the will to probate as presented. The will offered by Mrs. Richards in Stephens county, Okla., was contested by Mrs. Huff, and the proceedings came to this court, where it was finally denied probate. Richards v. Huff, 104 Okla. 221, 231 Pac. 76.

However, prior to that decision, Mrs. Huff had filed her petition in the county court of Stephens county, Okla., for ancillary probate of the will originally admitted in Texas, and that proceeding had been held in abeyance pending the appeal here in the other case. And upon final decision of the other case, the ancillary proceeding was heard in the county court of Stephens county, and the Texas will was denied ancillary probate, but, on appeal, the district court admitted the will, and Mrs. Richards brought this appeal.

The question is not presented, and, therefore it is not necessary to decide, whether the will is entitled to original probate under subdivision 2, section 1088, C. O. S. 1921.

The decisive question involved throughout this particular proceeding is whether or not the decedent was a resident of Stephens county, Okla., at the time of his death within the meaning of section 1088, subd. 1, C. O. S. 1921, providing that wills shall be proved in the county in which the decedent was a resident at the time of his death, no matter where he died; for, if decedent resided in Stephens county, as claimed by the contestant, Mrs. Richards, then such will must be proved as a domiciliary will in that county, if at all, and this attempted ancillary probate of it must fail. Siefert v. Siefert, 82 Okla. 230, 200 Pac. 243; Strathman v. Kinkelaar, 105 Okla. 290, 233 Pac. 215.

The fact that the Texas court found that decedent was a resident there when he died, involving the question of jurisdiction of the subject-matter, is not conclusive on the

courts of this state under the full faith and credit clause of the Constitution of the United States (art. 4, sec. 1), but the matter could be inquired into when the will was offered here for ancillary probate. Strathman v. Kinkelaar, supra; Estate of Clark, 148 Cal. 108, 82 Pac. 760, 113 A. S. R. 197, and notes; Scripps v. Wayne, Probate Judge, 131 Mich. 265, 90 N. W. 1061, 100 A. S. R. 614; Burbank v. Ernst, 232 U. S. 162, 58 L. Ed. 551, 34 Sup. Ct. Rep. 299; In re Coppock's Estate, 72 Mont. 431, 234 Pac. 258.

Courts have sometimes seen a distinction between what constitutes "domicile" and "residence," when interpreting different statutes wherein those words were used, but this court has not recognized such distinction when applying the statute under consideration, but has treated the words as interchangeable and synonymous.

The word "residence" carries various shades of meaning, and its meaning is generally governed by the connection in which it is used. In re Town of Hactor, 24 N. Y. Supp. 475, 479. It is here used in its strict legal sense, and does not relate to a temporary abiding place. Buchholz v. Buchholz, 63 Wash. 213, 115 Pac. 88, Ann. Cas. 1912 D, 395; State v. Probate Court, 130 Minn. 269, 153 N. W. 520. But, as said in Schouler on Wills (6th Ed.) vol. 3, sec. 1461:

"Domicil may be regarded, in our common-law sense, as the place where one has his true, fixed, and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. It has also been defined as residence at a particular place with the intention to remain there permanently. And one's last domicil—the prime fact upon which turn those legal issues involved in the administration and settlement of his estate—is taken to be his fixed and permanent home at the time of his decease. Every one has a domicil; and the elements which establish that domicil are more easily conceived by the common mind than reduced to a close legal analysis."

Citing Thorndike v. Boston, 1 Met. (Mass.) 245, where it was said:

"No exact definition can be given of 'domicile,' it depends upon no one fact or combination of circumstances, but, from the whole taken together, it must be determined in each particular case."

See Ford v. Peck (Kan.) 225 Pac. 1054; and note to Berry v. Wilcon (44 Neb. 82) 48 A. S. R. 711.

The courts seem to fairly agree upon the basic principles which should be applied in

110

determining the question of one's domicile or residence in these cases, but usually the difficulty arises when attempting to apply these general rules to concrete testimony, itself conflicting, and upon the whole differing in some degree from every other decided case to be found. So that every case involving the question must stand upon its own facts, and a decision on such facts must, of necessity, be the result of a more or less arbitrary application of the rules of law to the facts presented. Carwile v. Jones, 38 Mont. 590, 101 Pac. 153, 158.

Though deciding a case involving the right of suffrage, we think this court recognized the principles of law here applicable in the opinion of Richardson v. Gregg, 144 Okla. 102, 290 Pac. 190, wherein we quoted from 20 C. J. page 69, as follows:

"While there is no absolute criterion by which to determine one's place of residence, but each case must depend upon its particular facts and circumstances, yet three rules seem to be reasonably established: (1) That a man must have a residence somewhere; (2) that when once established it is presumed to continue until a new one is established; and (3) that a man can have but one domicile of citizenship at a time."

In the case of Youngblood v. Rector, 126 Okla. 210, 259 Pac. 579, Youngblood's will was presented for probate in Caddo county, Okla., and was contested on the ground that the decedent, though once a resident of Caddo county, had become a resident of Missouri before he died in Missouri. This court in the opinion stated principles of law in point here, as follows:

"The general rule is that domicile is changed from one place to another, or one state to another, only by abandonment by a person of his first place of domicile with the intention not to return, and by taking up his residence in another place with the intention of permanently residing in that place. In other words, to effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home."

See Anthis v. Drew, 123 Okla. 18, 252 Pac. 11.

This proceeding is in the nature of a suit in equity. Therefore, it is our duty to weigh the evidence and determine whether the judgment of the trial court is clearly against the weight of such evidence.

The decedent was about 42 years old at the time of his death. The evidence is not clear as to where he was born, but his mother, Mrs. Huff, the proponent of the will, is shown to have lived in San Angelo, Tom Green county, Tex., for many years. She and her brother and sister lived in a home bought and furnished by the decedent and owned by him, and he aided in the household expenses. There is otherwise testimony that decedent spent some of his time at this place with his mother, and she testified he was there about half the time, but his wife, the contestant, stated that he had been there but once since 1918, and then for a few days' visit. He was a gambler, and it does not appear that he had any other fixed and legitimate business until after coming to Duncan, Stephens county, Okla., in January, 1921, and when he bought an interest in an oil lease. The lease was developed and produced oil. One witness did say that he drilled a dry hole for oil at Wichita Falls, Tex., which happens to have been just prior to coming to Duncan. There is in the record a photostatic copy of a passport dated November 28, 1919, issued to him to visit Cuba, and this visit was made in the early part of 1920. On the back of the passport appears the signature of Huff, and apparently in the same handwriting his address is given as 415 East 7th St., San Angelo, Tex., which is the property in which his mother lives, and which the proponent claims was his legal residence at the time he died. When he and his wife first came to Duncan, the country was being developed in that vicinity for oil. There is evidence that many of the people who came there about that time went away after the development had subsided, though some of them remained. When he and his wife first came there, they lived at a boarding house for a while, but later rented an apartment over a garage, where they were staying at the time that he was killed, September 14, 1921, out on, or near, the lease in which he was interested. Some of the witnesses for the contestant testified that he told them that he intended to make Duncan his future home; that he examined some residence property with a view of buying it for such purpose. But he did not buy any real estate. Other witnesses for the proponent said that he told them that San Angelo, Tex., was his home, and that he expected to return there as soon as his venture in the oil business was closed. He deposited a considerable sum of money in a bank at Duncan soon after he came there, and is not shown to have had any other banking connection. He is not shown to have acquired any property there except the interest in the oil and gas lease, and

maintained no home, except in the apartment as stated. At one time while there he signed a division order for the payment of oil runs and gave his address as Duncan, Okla. A witness testified that he sold him lubricating oil used in operating his lease, and that he told witness a short time before he died that he was going to return home to San Angelo, and that thereafter witness should send the bills for the oil to him at that address, but he later, while at Duncan, paid the bill. For several years he had suffered from tuberculosis. There is testimony that the climate of San Angelo is beneficial for this disease; that the State Institution for its treatment, as well as several like institutions, are located near that city. One witness said that Huff told him as soon as he made some money he was going back home to San Angelo on account of his health. Taking the statements of the witness as to his intention, and what he regarded as his home and residence, they are directly conflicting. Taking the evidence altogether, we think it can be fairly concluded that the evidence finds him first a resident of San Angelo, Tex., and that he himself still regarded that as his home. The question then is presented whether or not there is evidence sufficient to show that he removed from that place, that he left it for good, and established his residence at Duncan, within the meaning of the statute we are considering.

The trial court found that he was a resident of Texas and had never established a residence in this state. Bearing in mind the principles of law which we have stated, and by which the question as here presented should be determined, we are unable to say that such finding was clearly against the weight of the evidence.

We have examined the other incidental questions raised by the plaintiff in error, and find that neither of them requires a reversal of this case.

The judgment of the trial court is affirmed.

TEEHEE, HERR, LEACH, and BENNETT, Commissioners, concur.

By the Court: It is so ordered.