Florence R. GROSECLOSE,
Plaintiff in Error,

v.

Luetta RICE, Defendant in Error.

No. 39259.

Supreme Court of Oklahoma.

Oct. 24, 1961.

Rehearing Denied Nov. 21, 1961.

466 ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Tolbert & Gillespie, Hobart, Raymond E. Peterson, Casa Grande, Ariz., for plaintiff in error.

Montgomery & Montgomery, Hobart, Hicks & Fancher, Hollis, for defendant in error.

HALLEY, Justice.

Luetta Rice, hereafter referred to as proponent, filed in the County Court of Harmon County a petition to probate the will of Joseph L. Sherrill who died in that county on February 12, 1960. Florence R. Groseclose, hereafter referred to as contestant, filed a petition for contest of the will. The county court dismissed the probate for lack of jurisdiction, stating that Sherrill was not at the time of his death a resident of Harmon County. Proponent appealed to the District Court of Harmon County which court reversed the decision of the county court and remanded the matter to county court for further proceedings. This is an appeal from the judgment of the district court and from an order overruling motion for new trial.

On and before September 23, 1957, Joseph L. Sherrill was a resident of Pinal County, Arizona. On that date the Superior Court of said county adjudged him incompetent by reason of old age and senility and appointed contestant as guardian of his person and estate. In December, 1957, Joseph L. Sherrill, hereafter referred to as the incompetent, entered the Veterans Administration Hospital at Whipple, Arizona. Upon his release in January, 1958, he made his home in Arizona with proponent, with whom he returned to Oklahoma in May, 1958. In December, 1958, he was adjudged incompetent by the County Court of Harmon County, Oklahoma, and a guardian of his person and estate was appointed by that court. After returning to Oklahoma he lived at the homes of two nephews in Harmon County until his death nearly two years later.

The contestant contends that the residence of the incompetent remained in Pinal County, Arizona, from September 1957, until his death and that therefore there can be no jurisdiction for probate in Oklahoma. In her brief she devotes four propositions to this contention which may be .treated together as follows: Contestant states that there is no probate jurisdiction in Oklahoma because an Arizona resident who has been adjudged incompetent, or non sui juris, in Arizona cannot effectively change his residence or domicile to Oklahoma without the consent of his Arizona-appointed guardian and without an order of the Arizona court which made the appointment.

In speaking of residence within the meaning of 58 O.S.1951 § 5, subdivision 1, providing that wills shall be proved in the county in which decedent was a resident at the time of his death, this Court has not recognized any distinction between the words residence and domicile, but has treated the words as interchangeable and synonymous. Richards v. Huff, 146 Okl. 108, 293 P. 1028.

Contestant cites the Arizona statute which provides that the guardian may fix the residence of the ward in any county within the State, but not elsewhere without permission of the court. Title 14, Arizona

Revised Statute Annotated § 806. Such statute is in words almost identical with the Oklahoma Statute, 30 O.S.1951 § 15.

■ The case of Laughlin v. Williams, 76 Okl. 246, 185 P. 104, is cited by contestant to show that the language of the statute is controlling. The case holds that an attempt by an incompetent ward to change his residence from one county to another within Oklahoma without the knowledge or consent of his guardian is ineffective. That case is correct in stating the rule concerning an attempted intra-state change of residence by an incompetent ward. But the case at bar has to do with an attempted change of residence from one state to another. Therefore the Laughlin case is not in point. The Arizona statute referred to above could not have extra-territorial force and effect and prevent the incompetent ward from acquiring a residence outside the State of Arizona, if he had the requisite mental capacity and meets the requirements which we will hereafter discuss.

The contestant also cites In re Estate of Gray, 119 Okl. 219, 250 P. 422, 424, which involved a claimed lack of jurisdiction of the County Court of Osage County to probate the will of a deceased incompetent ward who had died while in a hospital in Colorado. In that case it was questioned whether the guardian had been authorized by court order to change the residence of the ward to Colorado, and whether the guardian made such change. The trial court answered both questions in the negative. This Court weighed the evidence and held that the findings of the trial court were not clearly against the weight of the evidence. Our opinion in that case went further, however, and indicated that the ward might be said to have established a new residence in Colorado if there had been testimony "that after leaving the sanitorium he (the incompetent ward) intended to continue his sojourn in more permanent surroundings."

In In re Nitey's Estate, 175 Okl. 389, 53 P.2d 215, 219, it is said:

"* * * Section 1449, C.O.S.1921, which is the statute under which Nitey

was adjudicated to be an incompetent (Id. section 1445, O.S.1931), recognizes two classes of persons for whom a guardian can be appointed, one, 'insane' persons, and the other, persons who from any cause are 'mentally incompetent to manage their property.' * * *

"The word 'insane' lexically 'signifies delirious; deranged in mind, distracted; unsound in mind or intellect.' 32 C.J. 613. * * *"

■■ It will be noted that the Superior Court of Pinal County, Arizona, did not find Joseph L. Sherrill was insane. Being adjudicated an incompetent and having a guardian appointed does not deprive one of testamentary capacity. In re Nitey's Estate, supra. Nor does it deprive one of the capacity to marry. In re Estate of Gray, supra. Nor does it deprive one of the capacity to continue a divorce proceeding. Scoufos v. Fuller, Okl., 280 P.2d 720. We believe that it will not deprive him of the capacity to acquire a new state domicile. The general rule is stated in 17A Am.Jur., Domicile § 82:

"* * * The mere fact that a person is of unsound mind does not necessarily preclude him from changing his state domicile if he still has lucid intervals or sufficient mental capacity to elect a new domicile. * * *"

See also Restatement, Conflict of Laws § 40.

Coppedge v. Clinton, 10 Cir., 72 F.2d 531, 534 is a case wherein the trial court was required to decide whether an incompetent ward had changed his residence or domicile from Oklahoma to Arkansas and thereby created the necessary diversity of citizenship required for jurisdiction of the case by the Federal court. The court held that the laws of Oklahoma could not prevent the ward from acquiring a domicile in Arkansas. The court said:

"* * * But a person not under legal restraint, who has reached his majority and possesses the requisite mental capacity, may change his domicile at will. The right to change one's

domicile is a natural right. (citing cases)"

We therefore conclude that in so far as probate residence and domicile are concerned an incompetent ward may change his residence from one state to another without permission of his guardian or the court which appointed the guardian if the ward understands the nature and effect of his act and if the requirements for change of residence are met. Concerning those requirements, in Jones v. Burkett, Okl., 346 P.2d 338, 341, we said:

"To effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home. * * *"

Therefore, contrary to contestant's complaint, the district court properly admitted evidence concerning the incompetent's mental capacity and his intention as to residence.

The district court found that the incompetent, after coming to Harmon County, Oklahoma, and prior to his death, had a sufficient degree of understanding to effect the change of his residence and that he did in fact acquire a new domicile in Harmon County, Oklahoma. Two physicians testified concerning the incompetent's mental capacity, and several friends and relatives testified concerning his intention as to residence. We have examined the record and believe that the findings of the district court were not contrary to or against the clear weight of the evidence.

Complaint is made that upon trial de novo the district court allowed issues to be entertained which were not presented in the county court. We have examined the record and feel that the same issues were presented and decided in each trial court.

Finally contestant contends that the district court failed to give full faith and credit to the findings and judgment of the Superior Court of Pinal County, Arizona. This contention is without merit. We have previously held that it is the duty of the court wherein a will is presented for probate to determine the jurisdictional fact of the residence of the testator at the time of his death and such determination is not, under the full faith and credit clause of the United States Constitution (Article 4, § 1), to be controlled by the finding and judgment of a foreign court on the question. Richards v. Huff, supra.

The judgment of the district court is affirmed.

WILLIAMS, C. J., and DAVISON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, V. C. J., concurs in result.

JOHNSON and BERRY, JJ., dissent.