2004 OK CIV APP 91

**In the Matter of the ESTATE OF Wanda Belle ADAMS, deceased.**

**Jerry Adams, Petitioner/Appellant,**

v.

**Ann Faye Idleman, Respondent/Appellee.**

No. 100533.

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 1, 2004.

Bill C. Lester, Purcell, OK, for Petitioner/Appellant.

Ted W. Haxel, Purcell, OK, for Respondent/Appellee.

CAROL M. HANSEN, Judge.

¶ 1 Appellant, Jerry Adams (hereafter Appellant), brings this appeal from the trial court's *Order Admitting Will to Probate* in the case of Wanda Belle Adams (Decedent). We find the trial court's determination was not clearly against the weight of the evidence and affirm.

¶ 2 The following facts are uncontested. Decedent executed a will on July 1, 1996. She was then in declining health but lived until February 8, 2003, at which time she was seventy three. During her later years she needed increasing assistance with her normal life activities. She had never married and had no children. As the result of illness at the age of twelve or thirteen, she found it necessary to use a wheelchair for all her adult life, but was able to work as a public accountant. She was survived by four sisters and three brothers. Another brother predeceased her.

¶ 3 Appellant, Decedent's brother, filed his *Petition for Letters of Administration and Determination of Heirs* on March 12, 2003. He alleged Decedent had died intestate. Appellee, Ann Fae Idleman (hereafter Appellee), Decedent's sister, filed her *Objection to Issuance of Letters of Administration,* alleging Decedent had died with a valid will.

Appellee asked the court to admit the July 1, 1996 will to probate and to appoint her as personal representative of the estate. The will left Decedent's home and adjoining land to Tommy and Judy Idleman, Appellee's son and daughter-in-law, and the remainder of the estate was to go to Appellee.

¶ 4 A hearing was held on the parties' respective requests. It was Appellant's position that Decedent "was not competent to execute a will on July 1, 1996." The two witnesses to Decedent's will testified at the hearing in support of its validity, as did Appellee and Tommy Idleman. One of the witnesses to the will was Larry Bonnell, the attorney who drafted it, and the other was another attorney. Appellant and Alta Mae Bowerman, another sister, testified in opposition to admitting the will to probate. Judy Idleman testified in rebuttal to Appellant's evidence.

¶ 5 The trial court held the will was valid and admitted it to probate. Appellee was appointed Personal Representative of the estate. In its order, the trial court set out the issues and facts which lead to its determination. The court concluded the case centered around the issue of testamentary capacity and that the "most complicating factor" was the court's granting of guardianship over Decedent at approximately the same time as Decedent executed her will. The trial court found the guardianship did not, as a matter of law, preclude Decedent from executing a valid will, and that the evidence of Larry Bonnell was "most convincing" because he had been involved with both execution of the will and application for Decedent's guardianship. Appellant brings his appeal from this order.

¶ 6 As his sole proposition of trial court error, Appellant contends the court's finding that Decedent possessed testamentary capacity "is not supported by the evidence." In probate cases, being of equitable cognizance, we will examine and weigh the evidence, but we must abide by the presumption that the trial court's determination is correct unless it is found to be clearly contrary to the weight of the evidence or to some governing principle of law. *In re Estate of Holcomb,* 2002 OK 90, 63 P.3d 9. Even

though we will weigh the evidence, we will accord some deference to the trial court's resolution of conflicting evidence because that court had the opportunity to observe the demeanor and conduct of the witnesses. *Id.,* at 13. The burden of persuasion on the issue of testamentary capacity lies with the party contesting the validity of the will. *Id.; In re Estate of Maheras,* 1995 OK 40, 897 P.2d 268.

¶ 7 In *Estate of Holcomb,* at, 13, the Supreme Court stated:

Testamentary capacity exists when a person possesses, in a general way, the ability to appreciate the character and extent of the devised property, understands the nature of the relationship between himself and the natural objects of his bounty, and apprehends the nature and effect of the testamentary act.... In adjudging a decedent's testamentary capacity, it is appropriate for the trial tribunal to consider evidence of the testator's mental capacity, appearance, conduct, habits and conversation both before and after the will's execution to the extent these factors are relevant to the maker's mental condition at the time the will was executed.

¶ 8 Appellant concedes the contested will was executed with the requisite formalities dictated by *84 O.S.1991 § 55,* but in his Brief in Chief contends the will is invalid because of noncompliance with *84 O.S. Supp.1992 § 41.* This latter section provides that one subject to guardianship or conservatorship may lawfully dispose of his or her estate by will, but requires the will to be subscribed and acknowledged in the presence of a judge of the district court. This contention fails because Appellant did not raise it before the trial court and is barred from raising it for the first time on appeal. *Marlin Oil Corporation v. Barby Energy Corporation,* 2002 OK CIV APP 92, 55 P.3d 446.[1]

¶ 9 In fact, Appellant's only assertion regarding execution which was raised before the trial court was that "[t]he will was not properly witnessed by two attesting witnesses as required by *84 O.S. § 55.*" Appellant's argument, which he reiterates here, was that Larry Bonnell could not properly have been one of the two required witnesses because on the same day the will was executed, Bonnell signed papers applying for guardianship over Decedent as an incompetent. Appellant further argues Bonnell's involvement with the guardianship application is inconsistent with the requirement under § 55 that he, as a witness to a will, certify the testator is "of sound mind."

¶ 10 Appellant's contention, however, ignores the long standing rule of law in this jurisdiction "that a presumption of want of testamentary capacity does not arise from the fact that the maker of a will may have been under guardianship at the time of the making of the will." *In re Nitey's Estate,* 1935 OK 1218, 175 Okla. 389, 53 P.2d 215. Thus, incompetency or impairment which may support guardianship was not, as a matter of law, preclusive of testamentary capacity, but was evidence for consideration of the court in determining the condition of Decedent's mind at the time she executed her will. *Id.,* at 218.[2]

¶ 11 The *Nitey* Court, at 218, held that "adjudication that Nitey was an incompetent person to manage her estate was not inconsistent with testamentary capacity." The Court noted contestants there "confuse[d] testamentary capacity with business capacity" and "assume[d] that all persons adjudicated incompetent are in the category of 'persons of unsound mind'." The *Nitey* Court further noted "that a person may not then have sufficient mind and vigor of intellect to transact business generally and make contracts, yet be competent to make a will." The presumption is that every person is sane. *Id.*

¶ 12 The *Order Appointing Guardians* over Decedent, which is a matter of record here, finds she was "impaired by reason of

---

1. Appellant concedes Decedent was not "subject to a guardianship" at the time she executed her will, but nonetheless, without citation of supporting legal authority, argues § 41 should be applied because guardianship was contemplated at the time of execution.

2. *Accord, Groseclose v. Rice,* 1961 OK 251, 366 P.2d 465; *In re Estate of Gentry,* 2004 OK CIV APP 34, 90 P.3d 1015; *In re Foley's Estate,* 1974 OK CIV APP 38, 531 P.2d 1075.

mental confusion and physical limitations, resulting in an inability to receive and evaluate information effectively, meet the essential requirements for her physical health and safety, and manage her financial resources." There is nothing in this finding, which was entered a month after Decedent executed her will, which would necessarily preclude a determination of testamentary capacity.

¶ 13 The guardianship finding here is very similar to the *Nitey* Court's discussion of one who may not have "sufficient mind and vigor of intellect to transact business generally", but still possess testamentary capacity. In view of the foregoing, Bonnell's witnessing that Decedent was not of unsound mind, as a measure of testamentary capacity, was not legally inconsistent with the contemporaneous application for her guardianship. The facts surrounding the guardianship were matters for the trial court to consider in its probate determination, but were not dispositive of it.

¶ 14 Appellant contends, in his Reply Brief, that Decedent's will was "an unnatural will in its disposition of her property." More specifically, he asserts Decedent's will was unnatural "in that she left the bulk of her estate to one sister only [Appellee] and wholly omitted her remaining six brothers and sisters and the children of her deceased brother."[3] Citing *In re Smiths's Estate*, 1946 OK 165, 197 Okla. 405, 172 P.2d 328, Appellant asserts that "[w]hile not conclusive, an unnatural disposition of property by the testator may be considered in determining his testamentary capacity." While we agree with Appellant's statement of the law, we are unpersuaded by his contention the will was an "unnatural" one, or that the will should be held invalid for that reason.

¶ 15 No presumption of testamentary incapacity arises because a will gives property to persons other than those "who are natural objects of the testator's bounty", and if a testator is possessed of testamentary capacity, he may "give [his property] entirely to strangers." *In re Newkirk's Estate*, 1969 OK 93, 456 P.2d 104. The Oklahoma Supreme Court has held "[i]t is natural for a person to make provisions in his will for those who were particularly close and helpful to him during his lifetime, and more especially, to those within his own family." *In re Lacy's Estate*, 1967 OK 123, 431 P.2d 366.

¶ 16 Appellee testified she had a long and close relationship with Decedent and that she was the "primary person who took [Decedent] to where she needed to go" until Tommy and Judy Idleman moved next door to Decedent. At Decedent's request, Tommy and Judy Idleman moved a house trailer onto Decedent's property in 1985. Decedent helped pay off the trailer and they remained there for twelve years, at which time they moved because of a property dispute with other family members.

¶ 17 Alta Mae Bowerman testifying for Appellant, stated she moved in with Decedent in April 1996 and began as her primary care giver then. This was disputed by Judy Idleman, who testified in rebuttal that Alta Mae did move in with Decedent, but had not done so in July 1996 when the will was executed. Tommy and Judy Idleman were still living on Decedent's property at that time.

¶ 18 Appellee also testified Decedent "had some problems with some of the other brothers and sisters" for "[q]uite a while." Decedent's difficult relationship with some of her siblings is also documented by other evidence. Larry Bonnell's notes taken when he was first interviewing Decedent indicated at the time she believed Appellant had a certificate of deposit which belonged to her and that two of her sisters also had property of hers. The notes further indicate Decedent had told Mr. Bonnell [1] another of the brothers owed her two years rent for commonly owned land he farmed, [2] Appellant, Alta Mae and sister Drewanna wanted to put her in a nursing home against her wishes, and [3] she did not want Alta Mae, her twin, to be her guardian. The notes evidence Decedent's state of mind at the time she executed her will and establish, along with the

---

**3.** Appellant apparently concedes the bequest to Tommy and Judy Idleman was not unnatural, stating "[a] fair reading of the testimony at trial would show that [Decedent's] needs were taken care of by Tommy and Judy Idleman for a number of years."

other testimony, that Decedent's disposition of property was supported by reason and was a "natural" disposition.

¶ 19 The trial court found in its order admitting Decedent's will to probate that Larry Bonnell was a long-standing member of the local bar who enjoyed a reputation for "competence and honesty" and determined he was the most credible witness. There is nothing to establish Mr. Bonnell had a personal interest or conflict of interest in this matter. He testified he was in the presence of Decedent on a number of occasions in the time period surrounding execution of the will and granting of the guardianship. He stated he believed Decedent was competent and possessed testamentary capacity on the date she signed her will.

¶ 20 The second witness, also an attorney, concurred in Mr. Bonnell's opinion and testified he remembered Decedent on that day as "sassy", "outgoing" and "upbeat." Both testified they would not have witnessed the will if they had not believed Decedent was competent. Mr. Bonnell further testified he drew the will according to Decedent's directions, and that she understood the nature and character of her property and that the will would dispose of her property. He said she knew who would receive the property and that she had other relatives.

¶ 21 Appellant and Alta Mae testified they believed Decedent would not have been competent to have executed her will. Appellant testified Decedent's mind was "slipping pretty good" by July 1996, and that she was subject to hallucinations which would lead her to call the sheriff's office that someone was breaking into her house. Appellant could not, however, on cross-examination, remember specifically if he had seen Decedent on July 1, 1996, and what was her state of mind on that day.

¶ 22 Alta Mae, when asked if Decedent knew what was going on in June and July 1996, responded, "I think part of the time, she might have", but that Decedent was calling her Mary Lynn, who was another sister. Alta Mae also testified Judy Idleman had written letters which were derogatory of other family members for Decedent to copy and send to Mr. Bonnell and the court. She said she had copies of those letters, but they were not submitted to the court. As noted above, July Idleman rebutted Alta Mae's testimony regarding when Alta Mae moved in with Decedent, stating it was after the will was executed. Judy also rebutted the testimony regarding letters she had allegedly drafted for Decedent to copy and send.

¶ 23 There is no dispute that Decedent did not enjoy good health at the time she executed her will. However, advanced age or physical infirmity alone do not render one incapacitated to make a will. *Rose v. Foster*, 1955 OK 242, 288 P.2d 745. The extent of Decedent's mental impairment is contested, but the trial court's finding that she possessed testamentary capacity at the time she executed her will is not clearly against the weight of the evidence. The trial court's order admitting Decedent's will to probate is accordingly AFFIRMED.

JOPLIN, J., and MITCHELL, P.J., concur.