2009 OK CIV APP 79

**Nancy LAZELLE, Plaintiff/Appellant,**

v.

**ESTATE OF Leon I. CRABTREE, deceased, Defendant/Appellee.**

**No. 105,368.**

Court of Civil Appeals of Oklahoma, Division No. 2.

June 8, 2009.

Certiorari Denied Sept. 28, 2009.

Jesse J. Worten, III, John M. Keefer, Brewer, Worten, Robinett, Bartlesville, Oklahoma, for Plaintiff/Appellant.

Guy Clark, Northcutt, Clark, Gardner, Hron & Brune, Ponca City, Oklahoma, for Defendant/Appellee.

JANE P. WISEMAN, Vice Chief Judge.

¶1 Nancy Lazelle (Plaintiff) appeals the trial court's order finding that the will executed by Leon Crabtree (Decedent) in Ari-

zona on July 19, 2004, is valid in all respects. Based on a review of the record and applicable law, we affirm the decision of the trial court.

## BACKGROUND

¶ 2 On May 9, 2006, Decedent died leaving five brothers and sisters. He left neither a surviving spouse nor children. In 2003, Decedent resided in Osage County, owning land, his home and other personal property. In May 2003, Decedent was found unconscious by his neighbors in his home. Decedent's admitting diagnosis at the hospital included "encephalopathy, supraventricular tachycardia (secondary to underlying pneumonia), and delirium with underlying dementia." Due to Decedent's diminished mental and physical condition, his brother Jim Crabtree (Guardian) petitioned the District Court of Osage County for guardianship of his person and property. The trial court appointed Jim Crabtree as Decedent's guardian on July 11, 2003. Guardian filed a "Plan for the Care and Treatment of Ward" on August 15, 2003, which included in part:

1. That the Ward is currently residing at My Father's Retirement Ranch in Wickenburg, Arizona and is it [*sic*] the belief of the Guardian that he is receiving appropriate care at said facility.

2. That the Ward will continue to reside at said facility until a different type of care is necessary.

¶ 3 The trial court approved this plan on September 29, 2003. Decedent resided at My Father's Retirement Ranch in Arizona from 2003 until 2006. On several occasions during this time period, Guardian petitioned the trial court to sell Decedent's real property which the court approved. When Decedent became terminally ill in 2006, he requested to return to Oklahoma to die and to be buried next to his wife. Decedent moved to the Fairfax Manor nursing home in Osage County where he died on May 9, 2006.

¶ 4 On May 30, 2006, Guardian filed a "Petition for Probate of Will and Determination of Heirs, Devisees and Legatees" requesting to be appointed personal representative of the estate pursuant to Decedent's "Last Will and Testament" executed on July 19, 2004, when Decedent was living in Arizona. Guardian also requested that Decedent's heirs be judicially determined by the trial court.

¶ 5 On June 8, 2006, Plaintiff filed her "Petition to Contest Will of Leon I. Crabtree" objecting to the probate of this will on several grounds. Plaintiff argues that because this Arizona will was invalid, Decedent's previous will executed on June 28, 1990, was not revoked. Decedent's previous will appointed Plaintiff personal representative and also left her a part of his estate. Plaintiff argued that the Arizona will was invalid because: (1) Decedent was a resident of Oklahoma at and prior to his death; (2) it was not executed in the presence of a judge of the Oklahoma district court pursuant to 84 O.S.2001 § 41(B); and (3) it was procured through undue influence.

¶ 6 A trial on the merits was held on August 15, 2007. On October 23, 2007, the trial court filed its "Decision" setting forth relevant facts and conclusions of law. The trial court found that Decedent was a resident of Arizona when he validly executed the will:

The testator/ward was a resident of the State of Arizona for purposes of creating, signing, acknowledging, publishing, and having witnessed, his last will and testament in Arizona without the requirement of a Judge for the reason that although subject to guardianship in Oklahoma, he had become [a] resident of Arizona. The will, being valid in Arizona, is valid in Oklahoma. By virtue of its terms, all previous wills were and are revoked.

The trial court also found the will to be validly executed while Decedent had testamentary capacity, free from any undue influence. The trial court therefore ordered the will admitted to probate and appointed Guardian as personal representative.

¶ 7 The trial court ordered Guardian's counsel to prepare a formal journal entry to effectuate its decision. The "Order Admitting Will to Probate" was filed on November 26, 2007. Plaintiff appeals the trial court's decision.

## STANDARD OF REVIEW

¶ 8 In the contest of a will, an appellate court will examine and weigh the evidence, but the trial court's decision will not be reversed unless clearly against the weight of the evidence or some governing principle of law. *See In re Estate of Mowdy,* 1999 OK CIV APP 4, ¶ 17, 973 P.2d 345, 350; *In re Estate of Sneed,* 1998 OK 8, ¶ 8, 953 P.2d 1111, 1115. In probate cases, an appellate court must presume that the trial court's determination is correct, unless clearly contrary to the weight of the evidence. *In re Estate of Adams,* 2004 OK CIV APP 91, ¶ 6, 101 P.3d 344, 345 (citing *In re Estate of Holcomb,* 2002 OK 90, ¶ 8, 63 P.3d 9, 13).

## ANALYSIS

¶ 9 Plaintiff appeals the trial court's findings arguing: (1) Decedent was an Oklahoma resident at all relevant times; (2) the Arizona will is invalid because it was not executed in the presence of an Oklahoma judge pursuant to 84 O.S.2001 § 41(B); and (3) the Arizona will is invalid because it was "procured through undue influence."

*1. Domicile/Residency.*

¶ 10 In examining the record to ascertain whether the will was validly executed in Arizona, we find the trial court properly found Decedent to be a resident of Arizona. Although the trial court found that Guardian initially moved Decedent to Arizona without prior court approval, the trial court clarified in its "Decision" that the court thereafter "approved of the residence of the ward in Arizona." The trial court approved Decedent's move to Arizona when it approved Guardian's treatment plan on September 29, 2003, as well as when it approved subsequent reports Guardian filed indicating Decedent lived in Arizona.

¶ 11 The requirements for a change of residence or domicile include: "an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home."

*Jones v. Burkett,* 1959 OK 221, ¶ 14, 346 P.2d 338, 341. After reviewing the briefs, depositions, and hearing trial testimony, the trial court found evidence supporting its conclusion that Decedent's residence/domicile changed from Oklahoma to Arizona. In its decision, the trial court found:

> On July 19, 2004, the date of the Will, decedent was living in Arizona in a retirement village to be near his brother who also was his guardian. The Guardian had filed reports indicating that Decedent was living in Arizona which reports were approved by the Court. Decedent had his close personal property including his favorite horse, "Doc", in Arizona with him. Decedent would enjoy visits out of the State of Arizona yet returned to Arizona.

The record reflects that Decedent had lived in Arizona for three years and had obtained an Arizona identification card. The attorney who drafted the Arizona will, James R. McArthur, testified about his will preparation discussion with Decedent on July 8, 2004:

> Q. Did [Decedent] indicate to you any desire to go back to Oklahoma?
>
> A. No. No. . . .
>
> . . . .
>
> A. When he came back in to do-to sign the will, he wanted burial instructions, because he wanted to make sure he was buried in Oklahoma with his wife.

¶ 12 McArthur took notes of his discussion with Decedent on the date he executed the will. The attorney's deposition testimony, substantiated by the copy produced at his deposition of his notes taken during the discussion, reflect that Decedent told McArthur that he likes My Father's Retirement Ranch and "[i]ntends to stay but wants to be buried in Oklahoma." The record supports the trial court's approval of Decedent residing in Arizona and its finding Decedent to have been a resident of Arizona when he executed his will.

*2. 84 O.S.2001 § 41(B).*

¶ 13 The trial court also found the Arizona will to be valid under Arizona law regarding wills made by a ward of a guardianship despite the fact that Arizona does not have a

provision similar to 84 O.S.2001 § 41(B) which requires judicial acknowledgment of a will executed by a ward:

> The appointment of a guardian ... does not prohibit a person from disposing of his estate, real and personal, by will; provided, that when any person subject to a guardianship ... shall dispose of such estate by will, such will must be subscribed and acknowledged in the presence of a judge of the district court.

¶ 14 Title 84 O.S.2001 § 71 provides in relevant part: "A will ... made out of this state by a person not having his domicile in this state; is as valid when executed according to the law of the place in which the same was made, or in which the testator was at the time domiciled, as if it were made in this state...." Title 84 O.S.2001 § 73 also provides in part:

> Whenever a will ... is duly executed according to the law of the place in which the same was made, or in which the testator was at the time domiciled, the same is regulated as to the validity of its execution, by the law of such place, notwithstanding that the testator subsequently changed his domicile to a place, by the law of which such will would be void.

¶ 15 Nothing in these statutes makes exceptions for out-of-state wills executed by wards under guardianship in *this* state. These statutes do not prohibit a trial court from recognizing the validity of an out-of-state will executed by a ward under guardianship in Oklahoma. If possible, this Court is required to construe statutory language in a manner that gives every word some operative effect, and we must vigorously resist reading into a statute elements or words that do not appear therein. *Oklahoma City Zoological Trust v. State ex rel. Pub. Employees Relations Bd.*, 2007 OK 21, ¶ 6, 158 P.3d 461, 464. We must ascertain the statutory language without adding, subtracting, deleting, or distorting words. *Id.* We must also presume that the Legislature expressed its intent and intended what it expressed when it promulgated the statute. *Id.*

¶ 16 We are without authority to read into these statutes words or meanings that do not appear on the face of the statutes. A will executed by a resident in another state is valid when executed according to the law of that place. The validity of the Arizona will did not change when Decedent later returned to Oklahoma to die and to be buried next to his wife.

¶ 17 We cannot agree with Plaintiff that it was against the clear weight of the evidence for the trial court to conclude that Decedent was domiciled in Arizona at the time the will in question was executed, nor, as Plaintiff argues, was the trial court's decision contrary to governing law because the Arizona will was not judicially acknowledged as required for similar wills executed in Oklahoma.

### 3. Undue Influence.

[10] ¶ 18 Once the trial court found that Decedent could execute a will as an Arizona resident, the trial court was then called upon to determine whether the will was valid under Arizona law. Plaintiff argued it was not because Decedent lacked testamentary capacity and the will was procured through undue influence.

¶ 19 Like Oklahoma, Arizona courts recognize a presumption that Decedent had testamentary capacity at the time he executed the will. *In re Estate of Silva,* 105 Ariz. 243, 462 P.2d 792, 796 (1969). "This presumption continues even after he has been adjudicated incompetent to handle his affairs, because it is recognized that even such a person may have lucid intervals during which he knows the extent of his estate and the proper objects of his bounty." *Id.; see also Groseclose v. Rice,* 1961 OK 251, ¶ 9, 366 P.2d 465, 468 ("Being adjudicated an incompetent and having a guardian appointed does not deprive one of testamentary capacity," nor does it deprive one of the "capacity to acquire a new state domicile.").

¶ 20 Once the presumption of undue influence arises, the burden of persuasion shifts to the proponent of the will. *Mullin v. Brown,* 210 Ariz. 545, 115 P.3d 139, 144 (Ct.App.2005). "[W]here a confidential relationship is shown the presumption of invalidity can be overcome only by clear and convincing evidence that the transaction was fair and voluntary." *Id.* at 143 (quoting *In re*

**16**

*Estate of Shumway,* 198 Ariz. 323, 9 P.3d 1062, 1067 (2000)).

¶ 21 The Supreme Court of Arizona has identified certain factors used to determine the existence of undue influence:

> In determining whether a contestant has established that a will has been procured through undue influence, certain factors have been treated as significant indicia of the presence or absence of such influence. These factors include the following: Whether the alleged influencer has made fraudulent representations to the testat[or]; whether the execution of the will was the product of hasty action; whether the execution of the will was concealed from others; whether the person benefited by the will was active in securing its drafting and execution; whether the will as drawn was consistent or inconsistent with prior declarations and plannings of the testat[or]; whether the will was reasonable rather than unnatural in view of the testat[or's] circumstances, attitudes and family; whether the testat[or] was a person susceptible to undue influence; and whether the testat[or] and the beneficiary have been in a confidential relationship.

*Mullin,* 115 P.3d at 144 (quoting *In re Estate of McCauley,* 101 Ariz. 8, 415 P.2d 431, 433, 434 (Ariz.1966)).

¶ 22 The trial court ultimately found the Arizona will to be validly executed and acknowledged when Decedent had testamentary capacity and was not acting under undue influence. In so doing, the trial court relied primarily upon testimony by Guardian, by Decedent's attorney who drafted the Arizona will (James R. McArthur), and by Decedent's physician (Dr. Mohammad S. Alam), all of which is specifically set forth in the trial court's decision.

¶ 23 After reviewing the record and applicable law, we do not conclude that the trial court's judgment is clearly contrary to the weight of the evidence or some governing principle of law or equity. Upon examination, Dr. Alam, who is board certified in geriatric medicine, found Decedent "was not totally incapacitated" and was "capable of understanding the nature of the execution of a will." The lawyer who consulted with De-

cedent and prepared the will testified Decedent appreciated the nature of his assets, knew his family, and appeared otherwise mentally competent to execute a will: "I had no question about his testamentary capacity. His proposed distribution was, in quotes, normal. He seemed well-aware of what he wanted to accomplish." Decedent's lawyer further testified that he "was perfectly satisfied the day we executed it that [Decedent] understood what we were doing and it was what he wanted to do." The attorney did not believe Decedent was under any undue influence. When asked if he had any reservation about whether Decedent was under any undue influence, he responded: "No reservation at all. I met with him twice by himself and gave him every opportunity to express any counterindications, which he didn't."

¶ 24 As to the issues of capacity and undue influence, the record supports the trial court's findings and conclusions. The trial court's order is not clearly contrary to the weight of the evidence nor to applicable law.

## CONCLUSION

¶ 25 The trial court properly determined the Arizona will to be valid in all respects. The trial court's extensive and clear findings of fact and conclusions of law are not contrary to the weight of the evidence nor erroneous as a matter of law. We affirm the trial court's determination that the will executed on July 19, 2004, is valid, and we find that it was properly admitted to probate in Oklahoma. The trial court's order is therefore affirmed.

¶ 26 **AFFIRMED.**

BARNES, P.J., and GOODMAN, J., concur.